**SO ORDERED.**

**SIGNED this 22 day of May, 2026.**

_____
**Joseph N. Callaway**
**United States Bankruptcy Judge**

_____

## UNITED STATES BANKRUPTCY COURT
### EASTERN DISTRICT OF NORTH CAROLINA
### RALEIGH DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | Case No. 26-01207-5-JNC |
| THREE OAKS BEHAVIORAL ) | |
| HEALTH & WELLNESS, PLLC ) | |
| ) | Chapter 11 |
| Debtor. ) | |

### FINAL ORDER AUTHORIZING
### DEBTOR'S USE OF CASH COLLATERAL

THIS CAUSE came on before the Court, upon the Debtor's Emergency Motion for Authorization to Use Cash Collateral Pursuant to 11 U.S.C. § 363 and § 506(c) (the "Motion") filed by the Debtor on March 16, 2026. It appears to the Court that the terms and conditions set forth below are reasonable and appropriate, are in the best interests of the bankruptcy estate and all creditors and should be approved. It further appears to the Court that the notice of the Motion that the Debtor provided to creditors and parties in interest is adequate and proper.

THEREFORE, based upon the Motion, the arguments of counsel, testimony of the Debtor, and the record in this case, the Court hereby makes the following FINDINGS OF FACT and

CONCLUSIONS OF LAW:

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and has statutory and constitutional authority to hear and determine and to issue final rulings in this constitutionally core proceeding under 28 U.S.C. § 157(b).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The Debtor filed its voluntary petition for relief pursuant to Chapter 11 of the United States Bankruptcy Code on March 16, 2026 (the "Petition Date") and currently operates as a debtor-in-possession.

3.      Three Oaks Behavioral Health & Wellness, PLLC is a North Carolina corporation that owns and operates an outpatient psychotherapy practice with locations in Wake, Durham and Chatham counties. It has been in business since 2017 and had 98 employees as of the Petition Date.

4.      The Debtor's only significant source of income is through continued operations and the cash proceeds generated thereby.  It appears that certain proceeds generated from the Debtor's continuing operations may constitute cash collateral of Truist Bank ("Truist"), CT Corporation System, as representative of an unidentified secured party ("CT Corp"), Parkview Advance, LLC ("Parkview") and Corporation Service Company, as representative of an unidentified secured party ("CSC") (collectively, the "Secured Parties") within the meaning of § 363 of the Bankruptcy Code. Both Truist and CT Corp appear to assert a security interest in all of the Debtor's assets. CSC asserts a security interest in the Debtor's future receivables.

5.      The Debtor is currently anticipating a continuation of operations by way of this proposed reorganization.  The Debtor believes and represents that in order to maintain existing operations and maximize the value of its assets, the Debtor will be required to incur certain operating expenses. The Debtor's only significant source of income is through continued

operations and the cash proceeds generated thereby. As a result, the Debtor requested a preliminary hearing on the Motion in order to avoid a closing down of operations and irreparable harm to the Estate.

6.      The Debtor will require necessary funds for operating its business and other expenses. The Debtor will provide a budget specifying these expenses.

7.      The Debtor will maintain one or more Debtor-in-Possession ("DIP") bank accounts, into which it will deposit all cash, checks and other cash items. The Debtor will segregate its cash collateral and non-cash collateral income sources.

8.      The Debtor represents that a reorganization and continuation of its operations will generate the greatest source of funds for creditors, including the Secured Parties. The Debtor will require access to the cash collateral on hand and generated by its continued operations in order to allow it to remain in business.

9.      For the purposes of this Final Order, the Debtor acknowledges and does not dispute the validity, priority, and enforceability of the liens asserted by the Secured Parties or the amounts due to the Secured Parties under their respective loan documents; provided, however, that neither the Debtor nor any other party in interest shall be precluded from reviewing and challenging the validity, priority, and enforceability of the security interest(s) and lien(s) held by the Secured Parties in addition to the amounts due to the Secured Parties.

10.     The Debtor proposes that the Secured Parties should be allowed, as adequate protection for the Debtor's use of the cash collateral, post-petition replacement liens on the Collateral securing their respective indebtedness with the same validity, priority, and enforceability as the Secured Parties had against the Collateral as of the Petition Date.

11.     The Debtor asserts that the terms, conditions, and limitations of this Order are

reasonably tailored to protect the interests of all creditors of the bankruptcy estate.

12.     The Court finds, on an final basis, that the requirements of the Bankruptcy Rules and the Bankruptcy Code, including without limitation Bankruptcy Rule 4001(d), have been satisfied for the Debtor's use of cash collateral and for the grant of adequate protection to the Secured Parties upon the terms set forth in this Final Order.

WHEREFORE, based upon the foregoing Findings of Fact and Conclusions of Law, the Court hereby ORDERS:

1.     Each of the Secures Parties' liens on the Collateral securing their indebtedness shall extend to the Debtor's post-petition assets to the extent and amount that they are secured as of the Petition Date; provided, however, that nothing in this Final Order shall be deemed to grant any of the Secured Parties a post-petition lien on assets, if any, in which it did not possess a valid, perfected, enforceable, and otherwise non-avoidable pre-petition lien(s).  The post-petition liens and security interests provided for herein shall survive the term of this Final Order to the extent the pre-petition liens were valid, perfected, enforceable, and non-avoidable as of the Petition Date. Replacement liens shall attach to all post-petition accounts, payment intangibles, healthcare insurance receivables, government reimbursement rights, and all proceeds thereof, whether now existing or hereafter arising, to the fullest extent permitted by §§ 552(b) and 363.  The Debtor does not hereby waive, and expressly reserves for itself and the bankruptcy estate (including other creditors), the right to challenge the validity and priority of the pre-petition liens of the Secured Parties and, derivatively, the post-petition liens provided for hereunder.  Until such time as any such lien is determined to be invalid by future Order of this Court, the Debtor acknowledges and agrees to the validity of the Secured Parties' liens and related loan documentation (collectively referred to hereinafter as the "Pre-petition Loan Documents").

2.     On or before June 10, 2026, and continuing on the tenth (10th) day of each month until confirmation of the Debtor's chapter 11 Plan, the Debtor shall pay $5,000.00 to Truist as additional adequate protection for the use of Truist's cash collateral, which amount shall first be applied to accrued interest and then to the outstanding principal under Truist's loan.

3.     Each replacement lien granted to the Secured Parties pursuant to this Final Order shall be subject to and subordinate to a carve-out for the payment of allowed professional fees and disbursements incurred by Court approved professionals ("Carve Out").  So long as the Debtor has the right to use Cash Collateral pursuant to this Final Order, professionals for the Debtor, if any, may be paid from Cash Collateral pursuant to the budget and procedures approved by the Court. To the extent such professional fees are approved by the Court and paid pursuant to this Final Order, they shall be free and clear of the liens of the Secured Parties.

4.     The Debtor shall be authorized to use cash collateral for its post-petition, necessary and reasonable operating expenses in accordance with the budget attached as Exhibit "A" and subject to the terms of this Final Order.  Any expenditure in excess of ten percent (10%) of the budgeted line item amounts shall require the prior written consent of the Secured Parties before being paid.

5.     The Debtor shall deposit all cash, checks, and other cash items received from the operation of the business encumbered by the asserted lien in favor of the Secured Parties into its Debtor-in-Possession ("DIP") Operating bank account.  The Debtor shall make disbursements for items designated in the budget from such account.

6.     The Debtor may request in writing that the Secured Parties approve an amended budget for the term of this Order (or a specific expenditure not included within the Budget).  If an amended budget is approved by the Secured Parties in writing, it shall become effective and shall

be deemed incorporated into this Order (in the place of the existing Budget) as of the date on which the Debtor and/or the Secured Parties (or either of them) file a copy of the amended budget with the Court. To the extent either of the Secured Parties declines any request by the Debtor to amend the Budget, the Debtor reserves the right to file an additional motion for authority to use cash collateral and to seek an expedited hearing thereon; provided, however, that such hearing shall not occur on less than three (3) business days' notice to the Secured Parties.

7.      On or before the respective dates set forth below, the Debtor shall deliver to the Secured Parties the following financial information and business data:

a.      Pleadings. The Debtor shall serve upon the Secured Parties a copy of any pleadings it files in this case.

b.      Access to Collateral. Upon reasonable prior notice, the Debtor shall provide to representatives and/or employees of the Secured Parties all such information as they may reasonably request for the purpose of evaluating their collateral, if any.

c.      Reports. The Debtor shall serve a copy of the monthly reports required by Rule 4002 on the Secured Parties.

These obligations of the Debtor are continuing in nature, shall survive the term of this Final Order, and shall remain in effect until the earlier of (a) the effective date of any confirmed Chapter 11 plan in this proceeding, (b) a sale of substantially all assets of the estate, (c) conversion of this case to another Chapter of the Bankruptcy Code, or (d) dismissal of this proceeding.

8.      To the extent that the protections described herein fail to adequately protect the Secured Parties' interest(s) (if any) in the Debtor's cash collateral, Secured Parties shall have the right to file a motion for an allowed priority claim under 11 U.S.C. § 507(b) to the extent of any diminution in value of their respective cash collateral from and after the Petition Date.

9. This Final Order shall remain in full force and effect until the earlier of (a) the entry of an Order by the Court terminating this Final Order for cause, including but not limited to breach of the terms and conditions of this Final Order; or (b) upon filing of a notice of default as provided in this Final Order.

10. All authority to use cash collateral as set forth herein shall expire as to any collateral that is the subject of an Order granting stay relief under Section 362 of the Bankruptcy Code. Also, such authority shall expire on mutual written agreement of the parties.

11. It shall be a default hereunder for any one or more of the following to occur:

a. the Debtor shall fail to comply with any of the terms or conditions of this Final Order;

b. the Debtor materially deviates from a budgeted line item amount without prior consent of Truist; or

c. the Debtor shall fail to file a Plan in accordance with Orders of this Court.

12. Upon the filing with the Court by the Secured Parties of a written notice of any such default (which shall be served upon the Debtor's counsel by electronic mail and United States mail, and shall be served upon the Bankruptcy Administrator by electronic mail and United States mail), Truist may seek an order of the Bankruptcy Court terminating the Debtor's authority to use Cash Collateral. The Debtor may request a hearing to challenge the declaration of default hereunder. The parties shall have the right to seek an expedited hearing related to any such notice of default; provided, however, that such hearing shall not occur on less than three (3) business days' notice to the other party.

13. Nothing herein shall be deemed to alter or affect the Secured Parties' liens and such

liens shall remain in full force and effect pursuant to the terms of the Secured Parties' loan documents and 11 U.S.C. § 552(b).

14.     Nothing in this order shall waive any rights of any creditor unless expressly provided for herein, including but not limited to the right to assert any claim pursuant to Section 507(b) of the Bankruptcy Code with priority over all other expenses of administration in this case and any ensuing Chapter 7 case.

15.     Nothing herein shall constitute (i) a marshaling of assets, (ii) a waiver of any rights or remedies of Truist under applicable law or the Pre-Petition Loan Documents, or (iii) consent to any surcharge under § 506(c), all of which are expressly reserved.

16.     Nothing in this Final Order shall constitute a finding as to the feasibility of any plan of reorganization or the likelihood of Debtor's successful reorganization.

17.     The Debtor shall not dispose of any asset out of the ordinary course of its business without the advance written consent of the Secured Parties and, as necessary, the approval of this Court.

18.     The terms and conditions of this Final Order do not necessarily constitute adequate protection of the interests of the Secured Parties in cash collateral.  The Debtor expressly reserves its right to seek additional use of cash collateral beyond the stated term of this Final Order.  Any party may seek further consideration of the relief granted in this Final Order or other cash collateral issues by filing a request with the Court; provided, however, that a hearing on any such request shall not occur on less than three (3) business days' notice to the Secured Parties, the Bankruptcy Administrator, Subchapter V Trustee, and the Debtor.  Nothing in this Final Order shall waive any rights of the creditors unless expressly provided for herein.

19.     If any or all of the provisions of this Final Order are hereafter modified, vacated or

stayed by any subsequent order of this Court or any other court, such stay, modification or vacation shall not affect the validity or enforceability of any lien or priority authorized or created hereby prior to the effective date of such modification, stay, vacation or final order to the extent that said lien or priority is valid, perfected, enforceable and otherwise non-avoidable as of the Petition Date. The validity and enforceability of all liens and priorities authorized or created in this Final Order shall survive the conversion of this case to a proceeding under Chapter 7 of the Bankruptcy Code or the dismissal of this proceeding.  This Final Order shall be binding upon and inure to the benefit of the Debtor.  The terms and provisions of this Final Order shall bind any trustee appointed for the Debtor's estate under any provision of the Bankruptcy Code.  This binding effect is an integral part of this Final Order.

20.     The Debtor shall serve notice of this Final Order on all parties entitled to receive the same pursuant to Bankruptcy Rules 1007 and 4001.

**END OF DOCUMENT**

**Exhibit A**
**30- Day Budget (June)**

| | | |
|---|---|---|
| **Starting Cash** | $ | 185,000.00 |
| | | |
| **Income** | | |
| Self Pay | $ | 172,500.00 |
| Insurance Collection | $ | 517,500.00 |
| Other | $ | 3,200.00 |
| **Total Income** | **$** | **693,200.00** |
| | | |
| **Expenses** | | |
| Payroll | $ | 498,000.00 |
| Payroll Taxes | $ | 34,860.00 |
| Health Insurance Benefits | $ | 55,000.00 |
| Other Benefits | $ | 12,000.00 |
| Rent | $ | 41,500.00 |
| Utilities | $ | 3,000.00 |
| Repairs & Maintenance | $ | 500.00 |
| Software Subscriptions | $ | 10,500.00 |
| Office Supplies | $ | 500.00 |
| Continuing Education | $ | 1,000.00 |
| Marketing/Advertising | $ | 5,000.00 |
| Business Insurance/Malpractice | $ | 3,750.00 |
| Triumph Credentialing | $ | 3,400.00 |
| HR Fractional | $ | 1,800.00 |
| Independent Contractors | $ | 2,200.00 |
| Workers Comp/Liability | $ | 1,000.00 |
| Patient Reimbursements | $ | 1,500.00 |
| Misc./Other | $ | 2,000.00 |
| Accounting | $ | 3,000.00 |
| Truist Loan Service | $ | 5,000.00 |
| Trustee Admin | $ | 1,000.00 |
| HRM Admins | $ | 4,000.00 |
| | $ | 690,510.00 |
| | | |
| **Net Cash Flow** | **$** | **6,690.00** |
| | | |
| Ending Cash | $ | 187,690.00 |