**UNITED STATES BANKRUPTCY COURT**
**EASTERN DIVISION OF NORTH CAROLINA**
**RALEIGH DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | **Case No. 26-01207-5-JNC** |
| THREE OAKS BEHAVIORAL | ) | |
| HEALTH & WELLNESS, PLLC | ) | **Chapter 11** |
| | ) | |
| Debtor. | ) | |

**TRITON RECOVERY, LLC'S OBJECTION TO THREE OAKS BEHAVIORAL HEALTH & WELLNESS, PLLC'S EMERGENCY *EX PARTE* MOTION TO ENFORCE AUTOMATIC STAY, MOTION TO SHOW CAUSE WHY DAMAGES AND OTHER CIVIL CONTEMPT PENALTIES SHOULD NOT BE IMPOSED AGAINST TRITON RECOVERY, LLC, AND MOTION FOR CONTEMPT AND SANCTIONS FOR VIOLATION OF THE AUTOMATIC STAY**

NOW COMES Triton Recovery, LLC ("Triton"), by and through its undersigned counsel, and Objects to Three Oaks Behavioral Health & Wellness, PLLC's (the "Debtor") *Emergency Ex Parte Motion to Enforce Automatic Stay, Motion to Show Cause Why Damages and other Civil Contempt Penalties Should Not Be Imposed Against Triton Recovery, LLC, and Motion for Contempt and Sanctions for Violation of the Automatic Stay* ("Emergency Motion") [Dkt. 91], filed on June 4, 2026. In support of this Objection, Triton respectfully shows the Court the following:

1.     On or about March 12, 2026, Triton received a placement from Stellar Capital LLC ("Stellar") for the collection of an outstanding obligation allegedly owed by the Debtor and Cassie Lorraine Hall (the "Guarantor"). Amended Gilerman Declaration at ¶ 8. The obligation owed by the Debtor to Stellar is secured by the Debtor's accounts receivable and its accounts.  Triton is not the creditor—Stellar is the creditor. Amended Gilerman Declaration at ¶ 4.

2.     On or about March 13, 2026, Triton, acting on behalf of Stellar, transmitted UCC lien notices to nine (9) entities identified as account debtors and/or third-party payors believed to

1

be conducting business with the Debtor and/or the Guarantor. The recipients of the UCC lien notices included Aetna, American Express Travel Company Services Inc., Anthem-Elevance-BCBS, Authorize.Net, Cigna, Echo Health, Stripe, United Healthcare Services, and Worldpay. The notices were transmitted through the method deemed appropriate for each recipient, including, where applicable, service upon a registered agent, electronic mail, facsimile transmission, and/or submission through an online portal maintained by the recipient. Amended Gilerman Declaration at ¶ 11.

3.      With respect to the UCC lien notice directed to Cigna, the UCC lien notice was transmitted via electronic mail—in accordance with Triton's ordinary business practices—to Russo & Gould LLP ("Russo & Gould"), a law firm that serves as Triton's point of contact with respect to UCC lien matters involving Cigna. Amended Gilerman Declaration at ¶ 12.

4.      For UCC lien matters involving Cigna, Triton has used Russo & Gould as its point of contact, and electronic mail as its mode of communication, for at least three (3) years. Amended Gilerman Declaration at ¶¶ 12, 25.

5.      The Debtor filed a voluntary petition for relief pursuant to Subchapter V of Chapter 11 of the United States Bankruptcy Code on March 16, 2026 (the "Petition Date"). The Debtor currently operates as a debtor-in-possession.

6.      On or about March 17, 2026, bankruptcy counsel for the Debtor and Guarantor transmitted an email to a Triton representative advising that a bankruptcy petition had been filed on March 16, 2026, and attached a copy of the bankruptcy notice. Amended Gilerman Declaration at ¶ 13.

7.      Upon receipt of that notification, Triton immediately deactivated the file from active collection efforts and transferred the account to its bankruptcy queue for handling in

accordance with its standard business procedures. Amended Gilerman Declaration at ¶ 13.

8.      As part of its standard business procedures, on March 17, 2026, Triton issued nine (9) bankruptcy release letters ("UCC lien release(s)") to each of the nine (9) recipients of the UCC lien notices, via the same method of communication by which the UCC lien notices were issued. Amended Gilerman Declaration at ¶ 14.

9.      On March 26, 2026, Triton reengaged in discussions with Debtor's counsel regarding Debtor's claim that Triton was diverting funds in violation of the automatic stay, whereby Triton informed Debtor's counsel that Triton had issued UCC lien *releases* on March 17, 2026, following Triton's notice of the bankruptcy filing, and provided Debtor's counsel with a copy of the UCC lien release dated March 17, 2026. Amended Gilerman Declaration at ¶ 15.

10.     Following Triton's March 26, 2026 correspondence with Debtor's counsel with respect to the UCC lien release documentation, Triton received no further communication from Debtor's counsel regarding the UCC lien releases or that Triton had failed to take any action necessary to comply with the bankruptcy filing. Amended Gilerman Declaration at ¶ 16.

11.     On June 4, 2026, at approximately 9:15 p.m. EST, Triton received an email from Debtor's counsel noticing Triton of the filing of the Emergency Motion and attaching a copy of the Emergency Motion and related filings to the same. Amended Gilerman Declaration at ¶ 17.

12.     On June 5, 2026, Triton responded to Debtor's counsel's correspondence attaching the Emergency Motion, reiterating Triton's transmission of the UCC lien releases to the recipients on March 17, 2026, provided copies of each of the UCC lien releases sent to all recipients of a UCC lien notice, and further advised that that no funds were deposited by Triton in connection with the March 13, 2026 UCC lien notices at that time. Amended Gilerman Declaration at ¶¶ 18, 22.

3

13.     Subsequently, on June 5, 2026, Triton transmitted an email to Debtor's counsel acknowledging receipt of numerous checks on or about May 18, 2026 (the "May Checks"), providing the issuance date and amount of every check received, and informing Debtor's counsel of Triton's monthly remittance review procedures—which was in its early stages for funds received in May at the time of Triton's June 5, 2026 correspondence with Debtor's counsel. Amended Gilerman Declaration at ¶ 24.

14.     Triton did not retain any funds associated with the May Checks received by Cigna as of June 5, 2026. Amended Gilerman Declaration at ¶ 25.

15.     Pursuant to Triton's established policies and procedures, checks associated with accounts subject to bankruptcy proceedings are not deposited or negotiated. Following Triton's monthly remittance review process, which generally occurs between the 5th and 9th day of the *subsequent* month, such checks are reviewed and returned to the issuing payor together with notice of the applicable bankruptcy filing. Up to and until Triton's receipt of the Emergency Motion on June 4, 2026, the May Checks received by Triton on or about May 18, 2026, were, at all times, being handled in accordance with those procedures, and which are part of Triton's ordinary course business practices. Amended Gilerman Declaration at ¶ 26.

16.     On June 8, 2026, Debtor's counsel instructed Triton to endorse the May Checks in Triton's possession payable to the Debtor and send the May Checks via overnight delivery to the Debtor's address in Raleigh, North Carolina. Amended Gilerman Declaration at ¶ 27.

17.     The Court held a hearing on the Emergency Motion in Greenville, North Carolina on June 9, 2026. At the hearing, counsel for Triton and Debtor's counsel agreed that, in lieu of Triton endorsing and sending the May Checks to the Debtor via mail (and in an effort to expedite Debtor's receipt of the funds), Triton would instead deposit the May Checks and remit the funds

from the May Checks to the Debtor via wire transfer. Amended Gilerman Declaration at ¶ 27.

18. Between June 9, 2026 and June 11, 2026, Triton deposited the May Checks and remitted the sum of the May Checks to Debtor by way of a wire transfer. Amended Gilerman Declaration at ¶ 27.

19. On June 12, 2026, Triton received an additional eighteen (18) checks from Cigna associated with the Debtor (the "June Checks"), without any prior notification from Cigna or anyone else. Triton has not deposited, negotiated, or otherwise utilized any of the June Checks, pending further instruction from Debtor's counsel and/or this Court. Amended Gilerman Declaration at ¶ 28.

20. The Emergency Motion seeks to recover damages against Triton for purported violations of the automatic stay pursuant to 11 U.S.C. § 362(k), based upon the allegation that Triton "diverted" Debtor's funds, post-petition. Emergency Motion at ¶ 28. In support of this contention, the Emergency Motion solely relies on this Court's decision in *In re Kimbler*, 624 B.R. 774 (Bankr. E.D.N.C. 2020) and *In re Lofton*, 385 B.R. 133 (Bankr. E.D.N.C. 2008), to argue that damages are warranted in this case because "Triton intended to commit the acts which violated the automatic stay; namely, issuance of the UCC Notice and failure to adequately rescind the UCC Notice despite knowledge of the bankruptcy . . . ." Emergency Motion at ¶ 30.

21. The Emergency Motion was premature; and the allegations therein are misdirected at best, and blatantly false at worst.

22. As set forth in the Emergency Motion, "a party seeking to recover damages for violation of the automatic stay must establish three elements: 1) that a violation of the stay occurred; 2) that the violation was willful; *and* 3) that the violation caused actual damages." *In re Kimbler*, 624 B.R. at 779 (emphasis added).

23.     Here, Debtor fails to prove two (2) out of the three (3) elements that are required to be established in order to recover damages as a result of a violation of the automatic stay—(1) that Triton violated the automatic stay, and (2) that Triton's alleged violation was willful.

24.     Triton did not violate the automatic stay. Section 362 of the Bankruptcy Code provides that the filing of a bankruptcy petition "operates as a stay, applicable to all entities, of . . . (6) *any act* to collect, assess, or recover a claim against the debtor that arose before the commencement of the case . . .," including, "(3) *any act* to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate . . . ." 11 U.S.C. § 362(a)(3), (6) (emphasis added). In other words, a violation of the automatic stay occurs where an entity *performs an act* to collect a debt that arose prepetition, obtain possession of estate property, or otherwise *exercise control* over estate property, *after* the bankruptcy petition has been filed.

25.     The Emergency Motion argues that "Triton's diversion of the Debtor's funds with knowledge of the bankruptcy case is a clear violation of the automatic stay." Emergency Motion at  ¶ 30. The Debtor's implication that Triton affirmatively took steps after the Petition Date to "divert" funds from any third-party entities, for the benefit of Triton, is categorically false and inconsistent with the record before this Court.

26.     Indeed, the record clearly shows that, rather than taking steps to divert funds away from the Debtor, Triton promptly took steps to prevent further collection efforts as to the Debtor *and* the Guarantor by issuing the UCC lien releases within hours of receiving notice of the Debtor's bankruptcy filing. Amended Gilerman Declaration at ¶ 14.

27.     With respect to the issuance of the UCC lien notices, Triton transmitted UCC lien notices to nine (9) entities *on March 13, 2026*—three (3) days *prior to* the Petition Date and four

(4) days *prior to* Triton receiving notice of the bankruptcy. Amended Gilerman Declaration at ¶¶ 11, 13. Therefore, while Triton did perform the act of issuing UCC lien notices to various entities, such act clearly occurred days before the commencement of the bankruptcy case, days before Triton's actual notice of the bankruptcy case, and plainly does not constitute a violation of the automatic stay. *See In re McGhee*, 672 B.R. 278, 296 (Bankr. D.S.C. 2025) (the court denied debtor's request for relief under 11 U.S.C. § 362 because debtor failed to prove that creditor's actions to obtain estate property occurred post-petition).

28.     With respect to the Debtor's contention that Triton violated the automatic stay by failing to "adequately rescind the UCC Notice," mere retention of estate property post-petition does not constitute a violation of the automatic stay under 11 § 362. *City of Chicago v. Fulton*, 592 U.S. 154, 156, 141 S. Ct. 585, 589 (2021). Indeed, the language of the statute itself—which requires an entity to engage in an "act" with and/or "exercise control" over estate property— "implies that something more than merely retaining power" of the estate property is required to establish an automatic stay violation. *Id.* at 159-60. Here, Triton did not engage in any "act" to collect estate property after the Petition Date, or otherwise affirmatively "exercise control" over Debtor's funds at any point in time. To the contrary, almost immediately upon notice of the Debtor's bankruptcy filing, Triton issued UCC lien releases to every recipient of a UCC lien notice. More importantly, within days of Triton confirming receipt that checks were received by Cigna, Triton did not deposit, negotiate, or otherwise utilize the funds received until Triton was directed to deposit the funds and remit that same amount to the Debtor via wire transfer, despite Triton having no affirmative turnover obligation under § 362. *See Stuart v. City of Scottsdale (In re Stuart)*, 632 B.R. 531, 539 (B.A.P 9th Cir. 2021) (Court following Supreme Court's determination in *Fulton* that § 362(a)(3) does not contain "an affirmative turnover obligation.")

29.     Even if the Emergency Motion had been filed at a date after Triton's remittance review period for monies received in May (June 5, 2026 – June 9, 2026), Triton still would not have exercised control over the Debtor's funds under *Fulton's* standard, as it is Triton's established policies and procedures to take a conservative approach and return any checks associated with accounts subject to bankruptcy to the issuing payor—or Cigna—without depositing or otherwise negotiating the same. Amended Gilerman Declaration at ¶ 26; *Fulton*, 592 U.S. at 590 ("Taken together, the most natural reading of these terms – 'stay,' 'act,' and 'exercise control' – is that § 362(a)(3) prohibits affirmative acts that would disturb the status quo of estate property as of the time when the bankruptcy petition was filed." Triton's issuance of the UCC lien releases on March 17, 2026, was, if anything, an effort to improve the status quo—not disturb it.

30.     The Emergency Motion additionally fails to establish that Triton's actions were "willful." *In re Kimbler*, 624 B.R. at 779. "[W]illfulness does not refer to the intent to violate the automatic stay, but the intent to commit the act which violates the automatic stay." *In re Lofton*, 385 B.R. at 140. Here, the Debtor identifies two (2) acts committed by Triton that purportedly constitute willful violations of the automatic stay—(1) the "issuance of the UCC Notice", and (2) Triton's "failure to adequately rescind the UCC Notice." Emergency Motion at ¶ 30.

31.     It is undisputed that Triton issued pre-petition UCC lien notices on March 13, 2026—three (3) before the Petition Date. The record further shows, however, that not only did Triton not conduct any post-petition collection efforts, Triton promptly issued UCC lien releases to the account debtors of the Debtor on March 17, 2026, with the intention of stopping all future collection efforts against the Debtor and the Guarantor, even though the Guarantor (who is not in bankruptcy) is not protected by the automatic stay. Even further, Triton consistently communicated with Debtor's counsel about who UCC lien notices were issued to, the date the UCC lien notices

8

were issued, and the date the UCC lien releases were issued. Post-petition, when Triton became aware that it was in possession of the May Checks as a result of the UCC lien notice sent to Cigna, Triton was immediately agreeable to remit all funds in its possession at the direction of Debtor's counsel.

32.      To the extent that Debtor argues that Triton's issuance of the UCC lien releases was not enough to "stop 'the downhill snowball,'" *In re Highsmith*, 542 B.R. 738, 748 (Bankr. M.D.N.C. 2015), that is post-petition checks unilaterally being sent to Triton by Cigna, that assertion is false.  Again, Triton took immediate actions to halt all collection efforts within hours of receiving notice of the bankruptcy. Triton immediately sent the UCC lien release to Triton's known point of contact for Cigna, Russo & Gould. Triton  continues to cooperate with Debtor's counsel throughout the bankruptcy process to confirm and continues to be willing to return any funds that come into its possession at the direction of the Debtor and/or this Court.

33.      A finding that Triton's mere receipt and temporary possession of estate funds post-petition is a violation of the automatic stay is inconsistent with 11 U.S.C. § 362, contradictory to caselaw and the rights of a secured creditor, and would set the harsh precedent that *any* creditor who is in receipt estate property post-petition—whether by accident or design, and regardless of their efforts to prevent otherwise—would be vulnerable to costly litigation and sanctions.

WHEREFORE, based on the foregoing, and the testimony provided in the declaration of Erica Gilerman, Triton respectfully request the Court to:

1.  DENY the *Emergency Ex Parte Motion to Enforce Automatic Stay, Motion to Show Cause Why Damages and other Civil Contempt Penalties Should Not Be Imposed Against Triton Recovery, LLC, and Motion for Contempt and Sanctions for Violation*

*of the Automatic Stay*;

2. Award Debtor no damages as to Triton; and

3. For such other and further relief as this Court deems appropriate.

This the 18th Day of June 2026.

/s/ Byron L. Saintsing
Byron L. Saintsing [NC Bar No. 16035]

of SMITH DEBNAM NARRON DRAKE
SAINTSING & MYERS, LLP
PO Box 176010
Raleigh, NC 27619-6010
Telephone: (919) 250-2000
bsaintsing@smithdebnamlaw.com

*Attorneys for Triton Recovery, LLC*

10

## CERTIFICATE OF SERVICE

I hereby certify that on June 18, 2026, I caused a copy of the foregoing to be electronically filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel and parties of record. I also sent a copy of the foregoing to the Debtor at the following address via first class mail postage prepaid:

**Three Oaks Behavioral Health**
**& Wellness, PLLC**     (via U.S. Mail)
1011 Dresser Court
Raleigh, NC 27609


Lydia C. Carpenter       (via CM/ECF)
Jason L. Hendren
Rebecca Redwine Grow
Benjamin E.F.B. Waller
**Hendren Redwine & Malone, PLLC**
4600 Marriott Drive, Suite 150
Raleigh, NC 27612
lstoney@hendrenmalone.com
*Attorneys for Debtor*

Bankruptcy Administrator    (via CM/ECF)

George M. Oliver       (via CM/ECF)
PO Box 1548
New Bern, NC 28563
george@georgeoliverlaw.com
*Trustee*

             /s/ Byron L. Saintsing
             Byron L. Saintsing [NC Bar No. 16035]
             Smith Debnam Narron Drake
             Saintsing & Myers, LLP
             PO Box 176010
             Raleigh, NC 27619-6010
             Telephone: (919) 250-2000
             bsaintsing@smithdebnamlaw.com

             *Attorneys for Triton Recovery LLC*