**Fill in this information to identify the case:**

Debtor name **Three Oaks Behavioral Health & Wellness, PLLC**

United States Bankruptcy Court for the: EASTERN DISTRICT OF NORTH CAROLINA

Case number (if known) **26-01207-5-JNC**

☐ Check if this is an amended filing

Official Form 425A

# Plan of Reorganization for Small Business Under Chapter 11

**Three Oaks Behavioral Health & Wellness, PLLC's** **Plan of Reorganization, Dated** **August 12, 2026**

**Background for Cases Filed Under Subchapter V**

**A. Description and History of the Debtor's Business**

See Addendum.

**B. Liquidation Analysis**

See Addendum.

**C. Ability to make future plan payments and operate without further reorganization**

See Addendum.

**You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections.**

## Article 1: Summary

This Plan of Reorganization (the *Plan*) under chapter 11 of the Bankruptcy Code (the *Code*) proposes to pay creditors of Three Oaks Behavioral Health & Wellness, PLLC from its projected disposable income.

This Plan provides for:

- **1** class of priority claims;
- **6** classes of secured claims;
- **1** class of non-priority unsecured claims; and
- **1** class of equity security holders.

Non-priority unsecured creditors holding allowed claims will receive distributions, which the proponent of this Plan has set forth more particularly in the Addendum attached hereto. This Plan also provides for the payment of administrative and priority claims.

All creditors and equity security holders should refer to Articles 1 through 10 herein and the attached Addendum for information regarding the precise treatment of their claim. The Addendum attached hereto provides more detailed information regarding this Plan and the rights of creditors and any equity security holders.

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney if you have one. (If you do not have an attorney, you may wish to consult one.)**

## Article 2: Classification of Claims and Interests

| | | |
|---|---|---|
| 2.01 | **Class 1** ................................ | All allowed claims entitled to priority under § 507(a) of the Code (except administrative expense claims under § 507(a)(2) and priority tax claims under § 507(a)(8)). |
| 2.02 | **Class 2**……………………….. | The claim of Truist Bank ("Truist") to the extent allowed as a secured claim under §506 of the Code. |
| 2.03 | **Class 3**……………………….. | The claim of Kapitus Servicing, LLC ("Kapitus"), to the extent allowed as a secured claim under §506 of the Code. |
| 2.04 | **Class 4**……………………….. | The claim of the Parkview Advance, LLC ("Parkview"), to the extent allowed as a secured claim under §506 of the Code |
| 2.05 | **Class 5**……………………….. | The claim of Lendero, LLC ("Lendero"), to the extent allowed as a secured claim under § 506 of the Code. |
| 2.06 | **Class 6**……………………….. | The claim of CT Corporation System, as representative ("CT Corp"), to the extent allowed as a secured claim under § 506 of the Code. |
| 2.06 | **Class 7**……………………….. | The claim of Corporation Service Company, as representative ("CSC"), to the extent allowed as a secured claim under § 506 of the Code. |

| | | |
|---|---|---|
| 2.08 | **Class 8 ……………………..** | All non-priority unsecured claims allowed under § 502 of the Code. |
| 2.09 | **Class 9 ……………………..** | Equity interests of the Debtor. |

## Article 3: Treatment of Administrative Expense Claims, Priority Tax Claims, and Quarterly and Court Fees

| | | |
|---|---|---|
| 3.01 | **Unclassified claims** | Under section § 1123(a)(1), administrative expense claims and priority tax claims are not in classes. |
| 3.02 | **Administrative expense claims** | Each holder of an administrative expense claim allowed under § 503 of the Code will be paid in full on the effective date of this Plan in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor. See attached Addendum. |
| 3.03 | **Priority tax claims** | Each holder of a priority tax claim will be paid in full. See attached Addendum. |
| 3.04 | **Statutory fees** | Not applicable. |
| 3.05 | **Prospective quarterly fees** | All quarterly fees required to be paid under 28 U.S.C. § 1930(a)(6) or (a)(7) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code |

## Article 4: Treatment of Claims and Interests Under the Plan

4.01 **Claims and interests shall be treated as follows under this Plan:**

| Class | Impairment | Treatment |
|---|---|---|
| **Class 1 - Priority non-tax claims** | ☐ Impaired<br>☒ Unimpaired | Any allowed Class 1 claim(s) shall be paid in full in cash as more particularly described in the attached Addendum. |
| **Class 2 – Secured claim of Truist Bank** | ☒ Impaired<br>☐ Unimpaired | Any allowed Class 2 claim(s) shall be paid as more particularly described in the attached Addendum. |
| **Class 3 – Secured claim of Kapitus Servicing, LLC** | ☒ Impaired<br>☐ Unimpaired | Any allowed Class 3 claim(s) shall be paid as more particularly described in the attached Addendum. |
| **Class 4 – Secured claim of the Parkview Advance, LLC** | ☒ Impaired<br>☐ Unimpaired | Any allowed Class 4 claim(s) shall be paid as more particularly described in the attached Addendum. |
| **Class 5 – Secured claim of Lendero, LLC** | ☒ Impaired<br>☐ Unimpaired | Any allowed Class 5 claim(s) shall be paid as more particularly described in the attached Addendum. |
| **Class 6 – Secured claim of CT Corporation System, as representative** | ☒ Impaired<br>☐ Unimpaired | Any allowed Class 6 claim(s) shall be paid as more particularly described in the attached Addendum. |
| **Class 7 – Non-priority unsecured creditors** | ☒ Impaired<br>☐ Unimpaired | Any allowed Class 7 claim (s) shall receive pro rata distributions, if any, as more particularly described in the attached Addendum. |
| **Class 8 – Equity Security Holders** | ☐ Impaired<br>☒ Unimpaired | Members in this class shall retain their ownership interests as more particularly described in the attached Addendum. |

## Article 5: Allowance and Disallowance of Claims

5.01 **Disputed Claim**

A *disputed claim* is a claim that has not been allowed or disallowed by a final non-appealable order, and as to which either:

(i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or

(ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

5.02 **Delay of distribution on a disputed claim**

No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order.

5.03 **Settlement of disputed claims**

The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

## Article 6: Provisions for Executory Contracts and Unexpired Leases

6.01 **Assumed executory contracts and unexpired leases**

(a) The Debtor assumes, and if applicable assigns, the following executory contracts and unexpired leases as of the effective date: See attached Addendum.

(b) Except for executory contracts and unexpired leases that have been assumed, and if applicable assigned, before the effective date or under section 6.01(a) of this Plan, or that are the subject of a pending motion to assume, and if applicable assign, the Debtor will be conclusively deemed to have rejected all executory contracts and unexpired leases as of the effective date.

A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than 30 days after the date of the order confirming this Plan.

## Article 7: Means for Implementation of the Plan

7.01

The Debtor will fund payments from cash on hand and disposable income obtained from continued operation of the business.

## Article 8: General Provision

8.01 **Definitions and rules of construction**

The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the following definitions:

See attached Addendum.

8.02 **Effective Date**

The effective date of this Plan shall be January 1, 2027. If, however, a stay of the confirmation order is in effect on that date, the effective date will be the first business day after the date on which the stay expires or is otherwise terminated.

8.03 **Severability**

If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

8.04 **Binding Effect:**

The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of, the successors or assigns of such entity.

8.05 **Captions**

The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

8.06 **Controlling Effect**

Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of North Carolina govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

8.07 **Corporate Governance**

Under the Debtor's existing articles of organization and bylaws, each share is entitled to one vote. Votes are to be counted collectively regardless of class. Currently there is only one class of shares, all of which are currently owned by Casie Hall. No new shares will be issued.

8.08 **Retention of Jurisdiction**

See attached Addendum.

## Article 9: Discharge

**Discharge if the Debtor is an individual under Subchapter V:**

If the Debtor's Plan is confirmed under § 1191(a), on the effective date of the Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code. The Debtor will not be discharged from any debt:

(i) imposed by this Plan; or

(ii) excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

If the Debtor's Plan is confirmed under § 1191(b), confirmation of the Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments due within the first 3 years of this Plan, or as otherwise provided in § 1192 of the Code. The Debtor will not be discharged from any debt:

(i) on which the last payment is due after the first 3 years of the plan, or as otherwise provided in § 1192;

or

(ii) excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

## Article 10: Other Provisions

10.01 All provisions in the attached Addendum are hereby incorporated herein by reference. To the extent there is any conflict between the language in the Addendum and the language in this Form 425A, the language in the Addendum shall control.

Respectfully submitted,

*X* s/ Casie Hall — **Casie Hall, Owner**
**Three Oaks Behavioral Health & Wellness, PLLC, Debtor**

*X* s/ Lydia C. Carpenter — **Lydia C. Carpenter, Counsel for the Debtor**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**RALEIGH DIVISION**

| | | |
|---|---|---|
| **IN RE:** | ) | |
| | ) | **Case No. 26-01207-5-JNC** |
| **THREE OAKS BEHAVIORAL** | ) | |
| **HEALTH & WELLNESS, PLLC** | ) | |
| | ) | **Chapter 11** |
| **Debtor.** | ) | |

**ADDENDUM TO PLAN OF REORGANIZATION**

August 12, 2026

**TABLE OF CONTENTS**

I. Background ....................4

A. – Description and History of the Debtor's Business ....................4
B. – Liquidation Analysis ....................4
C. – Ability to Make Future Plan Payments and Operate Without Further Reorganization ....................5

II. Definitions and Rules of Construction ....................5

III. Summary of Plan ....................9

IV. Classification of Claims and Interests ....................9

A. – Summary of Classification ....................9
B. – Classification of Claims and Interests Generally ....................9
C. – Index of Classes ....................9

V. Treatment of Administrative and Priority Tax Claims ....................10

A. – Administrative Claims ....................10
B. – Priority Tax Claims ....................10

VI. Treatment of Claims and Interests Under the Plan ....................10

A. Class 1 – Priority Non-Tax Claims ....................10
B. Class 2 – Truist Bank ....................11
C. Class 3 – Kapitus Servicing, LLC ....................11
D. Class 4 – Parkview Advance, LLC ....................11
E. Class 5 – Lendero, LLC ....................12
F. Class 6 – CT Corporation System, as Representative ....................13
G. Class 7– Corporation Service Company, as Representative ....................14
H. Class 8 – General Unsecured Claims ....................14
H. Class 9 – Equity Security Holders ....................14

VII. Allowance and Disallowance of Claims ....................15

A. – Claims Subject to Objection ....................14
B. – Claims Objection Bar Date ....................14
C. – No Distributions on Disputed Claims ....................14

VIII. Provisions for Executory Contracts and Unexpired Leases ....................15

IX. Means for Implementation and Execution of the Plan ....................16

X. Preservation of Claims and Avoidance Actions ....................18

XI. Provisions Governing Distributions & Payments Under the Plan ....................19

XII. Acceptance or Rejection of Plan: Effect of Rejection by an Impaired Class ....................19

XIII. "Cramdown" for Impaired Creditors Not Accepting the Plan ....................20

XIV. Effect of Confirmation ....................21

XV. Discharge ....................21

XVI. Application of Plan Payments ....................22

XVII. Retention of Jurisdiction ....................22

XVIII. General Provisions ....................23

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**RALEIGH DIVISION**

| | | |
|---|---|---|
| **IN RE:** | ) | |
| | ) | **Case No. 26-01207-5-JNC** |
| **THREE OAKS BEHAVIORAL** | ) | |
| **HEALTH & WELLNESS, PLLC** | ) | |
| | ) | **Chapter 11** |
| **Debtor.** | ) | |

**ADDENDUM TO PLAN OF REORGANIZATION FILED JUNE 15, 2026**

Pursuant to the provisions of Sections 1189 and 1190 of Subchapter V of the Bankruptcy Code (11 U.S.C. §§ 1189 and 1190), the Debtor, Three Oaks Behavioral Health & Wellness, PLLC, hereby submits the following Addendum to the Plan of Reorganization ("Plan"):

## ARTICLE I
## BACKGROUND

### A. Description and History of the Debtor's Business

Three Oaks Behavioral Health & Wellness, PLLC (the "Debtor") is a North Carolina professional limited liability corporation that was founded in 2017. The Debtor owns and operates an outpatient psychotherapy practice and provides a variety of behavioral health and wellness services both in person and via telehealth to adults and children in communities throughout the Triangle region of North Carolina. As of the Petition Date, Three Oaks had ten (10) locations in Wake, Durham and Orange counties, and ninety-eight (98) total employees. The Debtor has since downsized significantly, and as of the date of this filing, has six (6) locations and ninety-two (92) total employees, and the Debtor is closing one (1) additional location effective August 31, 2026.

### B. Liquidation Analysis

To confirm the Plan, the Court must find that all creditors and interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and interest holders would receive in a Chapter 7 liquidation. A liquidation analysis is attached hereto as **Exhibit A**. Because the Plan proposes to pay unsecured creditors not less than they would receive in a Chapter 7 liquidation, the liquidation test is satisfied.

### C. Ability to Make Plan Payments and Operate Without Further Reorganization

The Debtor is prepared to demonstrate at confirmation that it will be able to make all Plan payments under the Plan or that there is a reasonable likelihood that the debtor will be able to make all payments under the Plan. Further, the means of execution provides appropriate remedies to protect the holders of claims or interests in the event that the payments are not made.

The Debtor intends to fund its Plan from cash on hand and continued operations as detailed in each class treatment. A projection of income and expenses is attached hereto as **Exhibit B.**

**You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections.**

## ARTICLE II
## DEFINITIONS AND RULES OF CONSTRUCTION

Unless the context requires otherwise, the definitions and rules of construction set forth in 11 U.S.C. §§ 101 and 102, and the additional terms and rules of construction set forth herein, shall apply for purposes of this Plan:

1. "**ADMINISTRATIVE CLAIM**" or "**ADMINISTRATIVE EXPENSE CLAIM**" shall mean any Claim allowed under 11 U.S.C. § 503(b) and entitled to priority pursuant to 11 U.S.C. § 507(a)(2) that has not been paid by the Debtor.

2. "**ALLOWED**" shall mean (a) any Claim against the Debtor, proof of which was timely filed or, by order of the Court, was not required to be filed; or (b) any Claim that has been listed in the Debtor's Schedules as liquidated in an amount and not disputed or contingent; and in each case in (a) or (b) above, as to which either (1) no objection to the allowance thereof or other similar pleading has been filed within the applicable period set forth in Article VII below, or (2) an objection or other similar pleading has been filed and the Claim has been allowed by a Final Order of the Court, but only to the extent so allowed; or (c) the treatment of a claim as set forth in the Plan.

3. "**BANKRUPTCY CAUSES OF ACTION**" shall mean any claim or cause of action which may be asserted by the Debtor or Debtor-in-Possession under 11 U.S.C. §§ 510(c), 541, 542, 543, 544, 546, 547, 548, 549, 550 or 553.

4. "**BANKRUPTCY CODE**" shall mean the United States Bankruptcy Code, Title 11 of the United States Code, as enacted in 1978 and thereafter amended. References to "§___" herein shall refer to a section of the Bankruptcy Code, 11 U.S.C. §§ 101, et seq.

5. "**BANKRUPTCY RULES**" shall mean the Federal Rules of Bankruptcy Procedure, as well as the Local Bankruptcy Rules for the United States Bankruptcy Court for the Eastern District of North Carolina, as amended from time to time, as applicable to Chapter 11 cases.

6. "**CLAIM**" shall mean a duly listed or a timely filed claim which is allowed in order to be paid by the Court. Claim shall also mean the treatment in the Plan to be provided to a creditor. If a conflict arises between a filed claim and the treatment of the claim set forth in the Plan, the treatment set forth in the Plan shall control.

7. "**CLAIMS BAR DATE**" shall mean, as applicable, (a) July 13, 2026 for

nongovernmental creditors, or (b) such other period of limitation as may be specifically fixed by an Order of the Court for the filing of certain Claims.

8. "**CLASS**" shall mean any one of the Classes of Claims or Interests designated in Article IV of the Plan.

9. "**CONFIRMATION DATE**" shall mean the date of entry by the Court of an order confirming the Plan at or after a hearing pursuant to 11 U.S.C. § 1191.

10. "**CONFIRMATION HEARING**" shall mean the hearing conducted by the Court regarding confirmation of the Plan pursuant to 11 U.S.C. § 1191.

11. "**CONFIRMATION ORDER**" shall mean the order of the Court confirming the Plan.

12. "**COURT**" shall mean the United States Bankruptcy Court for the Eastern District of North Carolina, including the United States Bankruptcy Judge presiding in the Chapter 11 case of the Debtor.

13. "**CREDITORS**" shall mean all creditors of the Debtor holding claims for unsecured debts, liabilities, demands or claims of any character whatsoever.

14. "**DEBTOR**" shall mean Three Oaks Behavioral Health & Wellness, PLLC.

15. "**DISALLOWED**" shall mean, with respect to any Claim, a Claim (i) proof of which is not filed prior to the applicable Claims Bar Date (as defined herein), or (ii) which is not listed on the Debtor's Schedules, or (iii) which is listed on the Debtor's Schedules as disputed, contingent, or unliquidated, or (iv) which is listed on the Debtor's Schedules as having a value of $0.00. Any Disallowed Claim shall not be entitled to any distribution under this Plan on account of such Claim, and such Disallowed Claim shall be disregarded for all purposes.

16. "**DISPUTED CLAIM**" shall mean any Claim (a) that is scheduled by the Debtor as disputed, contingent, unliquidated, or for an "unknown" or $0.00 amount, or (b) that is scheduled by the Debtor, or proof of which has been filed with the Court and with respect to which a timely objection to allowance, in whole or in part, has been filed and which objections have not been (i) withdrawn or settled, or (ii) determined by a Final Order. For the avoidance of doubt, if no proof of Claim has been filed by the applicable Claims Bar Date and the Claim (i) is not listed on the Debtor's Schedules, or (ii) has been or is hereafter listed on the Debtor's Schedules as disputed, contingent, unliquidated, or having a value of $0.00, then such Claim shall be Disallowed and shall be disregarded for all purposes.

17. "**DISTRIBUTION DATE**" shall mean the date on which distributions are to be made under the Plan.

18. "**EFFECTIVE DATE**" shall be January 1, 2027.

19. “**FINAL DECREE**” shall mean the order of this Court pursuant to Bankruptcy Rule 3022 closing this case.

20. “**FINAL ORDER**” shall mean an order of the Court that has been entered and either (a) the time for appeal from such entered order has expired, or (b) any appeal that has been time filed has been dismissed or otherwise finally determined.

21. “**GENERAL UNSECURED CLAIM**” shall mean any claim, whether or not liquidated or contingent, other than a tax claim, administrative claim, or secured claim. General Unsecured Claim shall not include claims that were not filed by creditors with the claim of that creditor being listed in the Debtor’s Schedules as disputed. General Unsecured Claim shall include under-secured portions of a secured claim as may be specified in the Plan.

22. “**IMPAIRED**” classes of creditors are those whose claims or interests are altered by the Plan, or who will not receive under the Plan the allowed amount of their claims in cash as of the “Effective Date” (as defined in the Plan).

23. “**PETITION DATE**” shall mean the date upon which the Debtor filed the voluntary Chapter 11 petition, to wit, March 16, 2026.

24. “**PLAN**” shall mean this Plan of Reorganization in its present form or as it may be amended or modified.

25. “**PRIORITY CLAIM**” shall mean any claim to the extent entitled to priority in payment under § 507.

26. “**PRIORITY TAX CLAIM**” shall mean any claim entitled to priority in treatment pursuant to § 507(a)(8).

27. “**PRO-RATA**” shall mean the amount of cash or property to be paid or distributed to a claimant with respect to an Allowed Claim on a particular date, in accordance with the ratio, as of such date, of the dollar amount of the Allowed Claim of such person in the indicated class to the aggregate dollar amount of Claims in the indicated class (including, in each such calculation, the full amount of Disputed Claims in the class which have been asserted or are otherwise pending and which have not yet been allowed or otherwise disposed of).

28. “**REORGANIZED DEBTOR**” shall mean the Debtor, as reorganized under the terms of this Plan and re-vested with the property which was formerly property of the estate, as provided by 11 U.S.C. § 1141(b).

29. “**SECURED CLAIM**” shall mean a Claim (a) secured by a lien, security interest, or other encumbrance on property in which the estate of the Debtor against which the Claim is asserted has an interest, which lien, security interest, or other encumbrance is valid, perfected and enforceable pursuant to applicable law or by reason of a Final Order entered by the Court, to the extent of the value of the Creditor’s interest in the estate’s interest in such property as determined pursuant to 11 U.S.C. § 506(a) and not subject to subordination; (b) subject to setoff pursuant to

11 U.S.C. § 553, to the extent of the value of the property subject to setoff; or (c) otherwise Allowed pursuant to the Plan as a Secured Claim. Secured Claim does not include that portion of the Creditor's Claim exceeding the value of the collateral or the Creditor's interest in the Debtor's interest in the collateral and does not include the value of any avoidable portion of such lien.

30. "**SECURED CREDITOR**" shall mean a Creditor that holds a Secured Claim against the Debtor or the Debtor's property. The Claim of such Creditor exceeding the value of the collateral, or exceeding the Creditor's interest in the Debtor's interest in the collateral, and the Claim of such Creditor to the extent of the present amount of any avoidable lien, shall be an Unsecured Claim.

31. "**SUBSTANTIAL CONSUMMATION**" shall mean the time the Reorganized Debtor has commenced the distribution of initial Plan payments to all creditor classes.

32. "**TRUSTEE**" shall mean the Subchapter V trustee appointed in this case pursuant to 11 U.S.C. § 1183(a).

33. "**UNIMPAIRED**" shall mean any Claim or Interest that is not designated as Impaired.

34. "**UNSECURED CLAIM**" shall mean the debt or Claim of a Creditor: (a) that is unsecured or is not secured by the Debtor's property, (b) that is secured by a lien or security interest against the Debtor's property, which lien or security interest is invalid, unenforceable, or avoidable due to the provisions of the Bankruptcy Code, the Debtor's exemptions, or for any other reason, (c) the Claim of a Creditor to the extent that the Claim exceeds the value of the collateral held by such Creditor, or the Creditor's interest in the Debtor's interest in the collateral, or (d) the Claim of a Creditor to the extent of the present amount of any invalid, improperly perfected, or avoided lien or any lien which is not immediately enforceable against the Debtor.

## ARTICLE III
## SUMMARY OF PLAN

The Plan contemplates maintaining payments to the Debtor's secured creditors. In accordance with the Plan, the Debtor intends to make payments on general unsecured claims from its projected disposable income and cash on hand. The Debtor's liabilities will be paid according to the priorities of the Bankruptcy Code and the Orders of this Court. The specific amounts and terms of payment will be established according to the treatment of each respective creditor.

## ARTICLE IV
## CLASSIFICATION OF CLAIMS AND INTERESTS

### A. Summary of Classification

As required by the Bankruptcy Code, the Plan places claims and equity interests in various classes and describes the treatment each class will receive. The Plan also states whether each class of claims or equity interests is impaired or unimpaired. Claims in Classes that are unimpaired are

deemed to have accepted the Plan and are not entitled to vote. Holders of Claims in Classes that are impaired are entitled to vote and are therefore being solicited to vote to accept or reject the Plan.

**B. Classification of Claims and Interests Generally**

A Claim or Interest is in a particular Class for the purposes of voting on, and receiving distributions pursuant to, the Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and such Claim or Interest has not been paid, released, withdrawn, or otherwise settled before the Effective Date. A Claim or Interest shall be deemed classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Interest qualifies within the description of such different Class. Any Class of Claims that, as of the date of the Confirmation Hearing of the Plan, is not occupied by an Allowed Claim, or a Claim temporarily Allowed under Bankruptcy Rule 3018, and for which, on the Effective Date, there are no Disputed Claims in such Class pending, shall be deemed deleted from the Plan for all purposes.

**C. Index of Classes**

The chart below lists each Class of Creditors, and a detailed description of each Class and its treatment following in Articles V and VI.

| Class No. | Class/Type | Impairment | Voting Rights |
|---|---|---|---|
| N/A | Administrative Claims | N/A | Not entitled to vote |
| N/A | Priority Tax Claims | N/A | Not entitled to vote |
| Class 1 | Priority Non-Tax Claims | Unimpaired | Not entitled to vote (deemed to accept) |
| Class 2 | Truist Bank | Impaired | Entitled to vote |
| Class 3 | Kapitus Servicing, LLC | Impaired | Entitled to vote |
| Class 4 | Parkview Advance, LLC | Impaired | Entitled to vote |
| Class 5 | Lendero, LLC | Impaired | Entitled to vote |
| Class 6 | CT Corporation Service, as Representative | Impaired | Entitled to vote |
| Class 7 | Corporation Service Company, as representative | Impaired | Entitled to vote |
| Class 8 | General Unsecured Claims | Impaired | Entitled to vote |
| Class 9 | Equity Security Holders | Unimpaired | Not entitled to vote |

## ARTICLE V
## TREATMENT OF ADMINISTRATIVE AND PRIORITY TAX CLAIMS

**A. Administrative Claims**

Except to the extent the holder of an allowed Administrative claim agrees otherwise, each

holder of an allowed Administrative claim shall be paid in cash (or such other form as is agreed upon by any holder of an allowed Administrative claim) and in full as soon as practicable after the later of (a) the Effective Date or (b) the date on which such claim becomes an allowed Administrative claim, except that allowed Administrative claims arising in the ordinary course of business shall, if due at a later date pursuant to its terms, be paid when otherwise due.

EXCEPT FOR COURT APPROVED PROFESSIONALS, ALL OTHER ADMINISTRATIVE CLAIMS AGAINST THE ESTATE MUST BE FILED WITHIN SIXTY DAYS (60) OF THE DATE OF THE CONFIRMATION ORDER. OTHERWISE, SUCH CLAIMS SHALL BE WAIVED AND SHALL NOT BE ASSERTED AGAINST THE DEBTOR AT ANY TIME.

**B. Priority Tax Claims**

The Debtor proposes to pay these claims in full in monthly installments over a period not exceeding five (5) years from the date of the Order for relief. Monthly payments shall commence on the fifteenth (15th) day of the first full month following the Effective Date and shall include interest at the rate determined under applicable nonbankruptcy law. Notwithstanding the foregoing, the Holder of an allowed Priority Tax Claim shall not be entitled to receive any payment on account of any penalty arising with respect to or in connection with the allowed Priority Tax Claim. Any Claim or demand for any such penalty will be subject to treatment as a General Unsecured Claim, to the extent allowed. These claims shall be reduced by any post-petition payments paid on the pre-petition claims. Further, to the extent that a tax lien has been filed in connection with any such claim, the holder of such claim shall retain its lien until the claim is paid in full.

## ARTICLE VI
## TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified and are excluded from the following Classes. Article V above describes the treatment of Administrative Claims and Priority Tax Claims. For the purposes of this Plan, holders of Claims against, or Interests in, the Debtor are classified as follows in accordance with section 1122(a) of the Bankruptcy Code, provided that (a) if the Plan is confirmed, recovery will be limited to the amount provided by the Plan; and (b) notwithstanding the classification and treatment of Claims set forth herein, any holder of an Allowed Claim may agree to less favorable treatment than that set forth herein, in which case such holder may be paid in accordance with such agreement:

**A. Class 1- Priority Non-Tax Claims**

On the Effective Date, the holders of Allowed Claims in Class 1 shall receive (a) all amounts to which such holder is entitled on account of such allowed Claim on the later of (i) the Effective Date or (ii) the date when such allowed Claim becomes due and payable according to its terms and conditions, or (b) such other, less favorable treatment as is agreed upon by the Debtor and the holder of such allowed priority non-tax Claim. The Debtor does not believe there are any Claims in this class.

**B. Class 2 – Truist Bank ("Truist")**

1. Description of Class. The Debtor is indebted to Truist pursuant to a certain promissory note dated approximately November 18, 2024, related to a variable rate revolving line of credit (collectively, the "Truist Note"). Truist filed a UCC-1 Financing Statement, File No. 20240138049E, with the North Carolina Secretary of State on November 18, 2024 (the "Truist Financing Statement"). On June 18, 2026, Truist filed a proof of claim, Claim No. 10, asserting a secured claim in the total amount of $500,064.90.

2. Impairment. This class will be impaired.

3. Treatment. This obligation shall be treated as a secured obligation of the Debtor in the amount of $500,064.90. Truist shall retain its lien pursuant to Section 1129(b)(2)(A)(i)(1) of the Bankruptcy Code until the secured claim is paid. The Debtor shall amortize and pay Truist's claim over six (6) years, with interest accruing at a fixed rate equal to 6.4%. Monthly payments shall commence on the fifteenth (15th) day of January 2027, in the approximate amount of $8,382.27. The Debtor shall pay Truist an interest only payment in the total amount of $5,000.00 per month starting on September 10, 2026, and continuing through December 10, 2026.

**C. Class 3 – Kapitus Servicing, LLC ("Kapitus")**

1. Description of Class. The Debtor is indebted to Kapitus, LLC ("Kapitus") pursuant to a purported Loan Agreement and Security Agreement dated approximately March 27, 2025 (collectively, the "Kapitus Agreement"). Kapitus, through CT Corp, as representative, filed a UCC-1 Financing Statement, File No. 20250036886A, with the North Carolina Secretary of State on March 27, 2025 (the "Kapitus Financing Statement"). On March 31, 2026, Kapitus filed a proof of claim, Claim No. 3, asserting a secured claim in the total amount of $281,940.09, and an unsecured claim in the total amount of $100.00.

2. Impairment. This class will be impaired.

3. Treatment. Kapitus' claim will be treated as a general unsecured claim in Class 7 herein, as there is no collateral available to secure this claim after senior security interests. Within thirty (30) days of the Effective Date, Kapitus shall terminate the Kapitus Financing Statement. If Kapitus fails to timely terminate the Kapitus Financing Statement, then the Debtor shall be authorized and entitled to terminate the Kapitus Financing Statement on behalf of Kapitus.

**D. Class 4 – Parkview Advance, LLC ("Parkview")**

1. Description of Class. The Debtor is indebted to Parkview Advance, LLC ("Parkview") pursuant to a Merchant Cash Advance Agreement dated approximately January 14, 2026 (the "Parkview Agreement"). Parkview filed a UCC-1 Financing Statement, File No. 20260013536K, with the North Carolina Secretary of State on February 2, 2026 (the "Parkview Financing Statement"). As of the date of this Plan, Lendero had not filed a proof of claim.

2. Impairment. This class will be impaired.

3. Treatment. Parkview's claim will be treated as a general unsecured claim in Class 7 herein, as there is no collateral available to secure this claim after senior security interests. Within thirty (30) days of the Effective Date, Parkview shall terminate any and all UCC-1 financing statements filed by Parkview, or by any representative of Parkview, with the North Carolina Secretary of State in connection with the Parkview Agreement. If Parkview fails to timely terminate such financing statement(s), then the Debtor shall be authorized and entitled to terminate the such financing statement(s) on behalf of Parkview.

**E. Class 5 – Lendero, LLC ("Lendero")**

1. Description of Class. The Debtor is indebted to Lendero, LLC ("Lendero") pursuant to a "Future Receivables Sale and Purchase Agreement" dated approximately February 17, 2026 (the "Lendero Agreement"). Lendero filed a UCC-1 Financing Statement, File No. 20260030833J, with the North Carolina Secretary of State on March 11, 2026 (the "Lendero Financing Statement"). As of the date of this Plan, Lendero had not filed a proof of claim.

2. Impairment. This class will be impaired.

3. Treatment. Lendero's claim will be treated as a general unsecured claim in Class 7 herein, as there is no collateral available to secure this claim after senior security interests. Within thirty (30) days of the Effective Date, Lendero shall terminate the Lendero Financing Statement. If Lendero fails to timely terminate the Lendero Financing Statement, then the Debtor shall be authorized and entitled to terminate the Lendero Financing Statement on behalf of Lendero.

**F. Class 6 – CT Corporation Service, as Representative ("CT Corp")**

1. Description of Class. CT Corp UCC-1 Financing Statements on behalf on certain unknown lender(s) with the North Carolina Secretary of State, as follows:

a. File No. 20250036886A, filed on March 27, 2025, purporting to assert a security interest in all of the Debtor's assets;
b. File No. 20260020156F, filed on February 17, 2026, purporting to assert a security interest in all of the Debtor's assets.

2. Impairment. This class will be impaired.

3. Treatment. CT Corp's claims are disputed. The Debtor filed a Notice of Disputed Claims, D.E. 31, on March 24, 2026, which was properly served on CT Corp. No associated proof of claim has been filed as of the date of this plan; accordingly, CT Corp shall have thirty (30) days from the Effective Date to terminate their UCC. Should a creditor in this class fail to timely terminate their UCC, then the Debtor shall have the authority to record terminations with the North Carolina Secretary of State on behalf of creditors in this class.

**G. Class 7 – Corporation Service Company ("CSC")**

1. Description of Class. On or about November 14, 2025, CSC filed a UCC-1 Financing Statement on behalf on an unknown lender, bearing File No. 20250167110G with the North Carolina Secretary of State purporting to assert a security interest in all of the Debtor's assets.

2. Impairment. This class will be impaired.

3. Treatment. CSC's claims are disputed. The Debtor filed a Notice of Disputed Claim, D.E. 30, on March 24, 2026, which was properly served on CSC. No associated proof of claim has been filed as of the date of this plan; accordingly, CSC shall have thirty (30) days from the Effective Date to terminate their UCC. Should a creditor in this class fail to timely terminate their UCC, then the Debtor shall have the authority to record terminations with the North Carolina Secretary of State on behalf of creditors in this class.

**H. Class 8 – General Unsecured Claims**

1. Description of Class. This class consists of all allowed, undisputed, non-contingent, general unsecured claims listed in the Debtor's petition or as otherwise approved by the Court.

2. Impairment. This class will be impaired.

3. Treatment. Claimants in this Class will receive distributions on a pro-rata basis after payment to creditors in all senior classes in accordance with the various treatments set forth herein. In Year One (1) of the Plan, the Debtor shall pay $2,000 to claimants in this class, payable in four (4) quarterly installments, with such payments commencing on the fifteenth (15th) day of the first full month following the Effective Date. In Years Two (2) and Three (3) of the Plan, the Debtor shall pay the claimants in this class the total sum of $100,000.00, payable in quarterly installments, with such payments commencing on the fifteenth (15th) day of the first full calendar month of 2028 and continuing through the remainder of the Plan term.

**I. Class 9 –Equity Security Holders**

1. Description of Class. This class consists of the sole shareholder of the Debtor, Casie Hall, who holds a 100% shareholder interest.

2. Impairment. This class will be unimpaired.

3. Treatment. The equity security holder listed above shall retain his ownership interest upon confirmation of the Debtor's Plan.

## ARTICLE VII
## ALLOWANCE AND DISALLOWANCE OF CLAIMS

**A. Claims Subject to Objection**

All Claims and security interests listed herein are, unless expressly accepted or consented to herein, subject to objections by the Debtor or any party in interest. All Disputed Claims shall be litigated to final order, settled, or withdrawn. The Debtor shall have authority to settle Disputed Claims without approval of the Court.

**B. Claims Objection Bar Date**

Unless a different date is set by order of the Court, all objections to Claims shall be filed by the later of: (i) 30 days after the Confirmation Date; (ii) 30 days after a timely proof of claim is filed; or, (iii) such later date as the Court may establish upon a motion by the Debtor, which may be approved without notice to any party-in-interest or hearing.

**C. No Distributions on Disputed Claims**

Except as may be otherwise agreed with respect to any Disputed Claim, no distribution under this Plan shall be made with respect to any portion of a Disputed Claim until such Disputed Claim shall have become an Allowed Claim or settled by the Debtor. Notwithstanding any date specified earlier in this Plan for the commencement of payments under this Plan on any particular Claim, if an objection to a Claim has been filed but not resolved at the time distribution on such Claim would otherwise commence if such Claim were an Allowed Claim, the first payment on such Claim under this Plan shall commence on the first day of the second month following the allowance of the Claim by Final Order, withdrawal of objection, or other resolution or compromise. If commencement of payments on any Claim are delayed under this Article, any payments subsequent to the first payment otherwise due under this Plan before the delayed commencement date shall, at the option of the Debtor in its sole discretion, be deferred to the end of the payment term and the payment term shall be extended so as to allow such payment to be made on the same periodic basis as the immediately preceding payments under the Plan.

## ARTICLE VIII
## MEANS FOR IMPLEMENTATION AND EXECUTION OF THE PLAN

A. The Debtor shall make payments under the Plan from cash on hand and revenue generated by the continued operation of the Debtor's business. The disbursements to be made under this Plan will consist of cash payments which shall be made towards (i) Allowed Administrative Claims, which are expected to consist of the fees and expenses of the Debtor's attorney, the Trustee, and the Debtor's accountant (ii) any Allowed Priority Tax Claims, (iii) any Allowed Priority Non-Tax Claims, (iv) Secured Claims, and (v) any Allowed General Unsecured Claims. The term of the Plan (the "Plan Term") shall be seven (7) years from the Effective Date.

B. Liquidation of Assets. The Debtor does not intend to liquidate any assets under the Plan. However, in the event there is a default under the Plan which is not timely cured as provided for herein, then the Debtor shall commence an orderly liquidation of its assets within six (6) months of such uncured default and distribute the net proceeds to creditors in accordance with their priorities as set forth in this Plan.

C. De Minimis Distributions. No distribution of less than fifty dollars ($50.00) shall be required to be made to any holder of an Allowed Claim. Instead, the Debtor shall have the option of retaining such funds to be distributed at the time of the final distribution in accordance with the Plan.

D. Unclaimed Property. If any distribution remains unclaimed for a period of ninety (90) days after it has been delivered, or attempted to be delivered, such unclaimed property shall be forfeited by such holder of the claim, and the Debtor shall not attempt to make any further distribution of such holder of the claim. Undistributed property shall be returned to the Debtor for distribution in accordance with the Plan.

E. The Debtor will execute and deliver all documentation to the Court and to all parties in interest who are entitled to receive the same, as required by the terms of the Plan and the Bankruptcy Code.

F. The Debtor shall take such other action as necessary to satisfy the other terms and requirements of the Plan and the Bankruptcy Code.

G. Except as expressly stated in the Plan or allowed by a Final Order of the Court, no interest, penalty, or late charge shall be allowed on any claim subsequent to the Petition Date, unless otherwise required by the Bankruptcy Code. No attorney's fees or expenses shall be paid with respect to any claim except as specified herein or as allowed by a Final Order of the Court.

H. Confirmation of this Plan shall constitute a finding that the Debtor does not waive, release or discharge, but rather retains and reserves any and all pre-petition claims and any and all post-petition claims that it could or might assert against any party or entity arising under or otherwise related to any state or federal statute, state or federal common law, and any and all violations arising out of rights or claims provided for by Title 11 of the United States Code, by the Federal Rules of Bankruptcy Procedure, or by the Local Rules of this Court, including all rights to assert and pursue any and all avoidance actions, preference actions, and any other actions pursuant to 11 U.S.C. §§ 545, 546, 547, 548 and 550, except to the extent such avoidance actions, preference actions, or other actions were assigned to a creditor(s) as part of the Debtor's Plan. Further, the Debtor retains its rights to assert and pursue all claims under 11 U.S.C. § 542, including without limitation actions to seek turnover of estate assets, actions to recover accounts receivable, and/or actions to invalidate setoffs.

I. Administrative Claims unpaid on the Effective Date will be paid from the Debtor's continued income.

J. All objections to claims, fee applications (with the exception of applications under 11 U.S.C. § 506(c), fee applications by counsel for the Debtor, and fee applications by the Trustee), will be filed with the Court within 30 days of the Confirmation Date; provided however, that the Debtor retains the right to extend this deadline upon a showing of cause, and the Debtor may object or otherwise pursue any claims against Secured Creditors relating to the payoff and/or satisfaction of their Secured Claims at any time. The statute of limitations of any and all Bankruptcy Causes of Action, and actions in State or Federal Court, not hereinbefore filed, shall be governed by their

respective statutes of limitations, 11 U.S.C. § 108(a)(2), or 11 U.S.C. § 546(a)(1)(A), whichever deadline shall be later.

K. Revesting of Assets. The revesting of assets in the Reorganized Debtor shall be subject to the rights and duties of the Debtor and the Reorganized Debtor as provided in this Plan. As of the Effective Date, the Plan shall revest in the Debtor all of the assets of the Debtor and without further documentation, all of the assets and assumed liabilities of the Debtor, together with all of the related rights, powers, obligations and duties of the Debtor as provided by the Bankruptcy Code, this Plan, all orders of the Court, all equitable rights and all laws shall be transferred to the Reorganized Debtor as a successor of the Debtor in all things.

L. Revocation of Plan. The Debtor has reserved the right to revoke and withdraw this Plan before the entry of the Confirmation Order. If the Debtor revokes or withdraws this Plan, or if confirmation of this Plan does not occur, then, with respect to the Debtor, this Plan shall be deemed null and void, and nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtor, as the case may be, or any other Person or to prejudice in any manner the rights of such Debtor, as the case may be, or Person in any further proceedings involving such Debtor.

M. Authority of the Debtor. The Debtor shall have the authority to implement any terms or provisions under this Plan. To the extent that any right is granted to the Debtor under the Plan, then the Debtor shall have authority to carry out any and all acts necessary to fulfill the terms of the Plan.

N. The Debtor shall file Post-Confirmation Reports with the Clerk of Court pursuant to § 1187(b) with a copy served upon the Bankruptcy Administrator and Subchapter V Trustee. The first report shall be due on the earliest of January 30, April 30, July 30, or October 31, in the calendar year in which this Plan is confirmed. The Debtor shall file subsequent reports at the end of every succeeding quarter (April 30, July 30, October 31, and January 30), until the Plan is substantially consummated. Such quarterly reports shall reflect any progress made in consummating the Plan during the period covered by the report. Post-Confirmation Reports shall be filed in the format prescribed by the Bankruptcy Administrator.

O. Within fourteen (14) days of substantial consummation of the Plan, as defined by § 1101(2), the Debtor shall file with the Court and serve upon the Trustee, the Bankruptcy Administrator, and all parties in interest notice of such substantial consummation in accordance with 11 U.S.C. § 1183(c)(2). Regardless of whether the Plan is confirmed under Section 1191(a) or Section 1191(b), upon the filing of the notice of substantial consummation, the service of the Trustee shall terminate and the Trustee shall make a final report and file a final account of the administration of the estate within seven (7) days of the notice filed under § 1183(c)(2). The Bankruptcy Administrator may reappoint a trustee as needed for the performance of duties under section 1183(b)(3)(C) and section 1185(a) of the Bankruptcy Code until such time as the Debtor has completed payments under the Plan and received a final decree. Within thirty (30) days of substantial consummation, the Debtor shall file a final report, in a format prescribed by the Bankruptcy Administrator, reflecting the payments made for all costs of administration and each Class of creditors, and a motion for the entry of a Final Decree pursuant to Bankruptcy Rule 3022.

## ARTICLE IX
## PRESERVATION OF CLAIMS AND AVOIDANCE ACTIONS

A. Preservation of Claims and Avoidance Actions Generally. Notwithstanding anything to the contrary in the Plan, the provisions of the Plan and/or Confirmation Order are not intended to have, and shall not have, any *res judicata* or collateral estoppel effect with respect to any Bankruptcy Causes of Action that the Debtor may assert, regardless of whether and to what extent such Bankruptcy Causes of Action are specifically described in the Plan or any Disclosure Statement. Unless any Bankruptcy Causes of Action are expressly waived, relinquished, released, compromised, or settled in the Plan or by Final Order of the Court, all such Bankruptcy Causes of Action are expressly reserved and preserved for later adjudication and, therefore, no preclusion doctrine, including without limitation, the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, estoppel, or laches shall apply to such Bankruptcy Causes of Action upon or after confirmation of the Plan. Furthermore, notwithstanding any provision or interpretation to the contrary, nothing in the Plan or Confirmation Order, including the entry thereof, shall be deemed to constitute a release, waiver, impediment, relinquishment, or bar, in whole or in part, of or to any recovery or any other claim, right, or cause of action possessed by the Debtor prior to the Effective Date. This shall include, without limitation, all pre-petition claims and any and all post-petition claims that the Debtor could or might assert against any party or entity arising under or otherwise related to any state or federal statute, state or federal common law, and any and all violations arising out of rights or claims provided for by the Bankruptcy Code, by the Bankruptcy Rules, or by the Local Rules of the Court, including all rights to assert and pursue any Bankruptcy Causes of Action. Finally, the Debtor retains all rights to assert and pursue all claims under 11 U.S.C. § 542, including without limitation actions to seek turnover of estate assets, actions to recover accounts receivable, and/or actions to invalidate setoffs.

B. Preservation of Avoided Transactions for the Benefit of the Estate. All transactions avoided or otherwise set aside pursuant to §§ 510(c), 544, 547, 548, and/or 549, if any, shall be preserved for the benefit of the estate pursuant to § 551 and applicable case law. All litigation costs, fees, and expenses incurred in litigating or collecting on such recoveries shall be treated as an Administrative Claim under Article V above.

C. Preservation of § 506(c) Claims. Notwithstanding confirmation of the Plan and the occurrence of the Effective Date, the Debtor shall have the right to seek recovery of the cost of maintaining and preserving any collateral or property.

## ARTICLE X
## PROVISIONS GOVERNING DISTRIBUTIONS & PAYMENTS UNDER THE PLAN

A. Payments By Debtor. The Debtor shall make all payments to creditors under the Plan, regardless of whether the Plan is confirmed pursuant to 11 U.S.C §1191(a) or §1191(b). The Subchapter V Trustee shall make no distributions under the terms of the Plan.

B. Delivery of Distributions in General. Distributions to holders of allowed claims shall be made: (i) at the addresses set forth in the proofs of claim filed by such holders; (ii) at the

addresses set forth in any written notices of address change submitted to the Court or Attorney for the Debtor after the date on which any related proof of claim was filed; or, if the information described in clauses (i) or (ii) is not available, then (iii) at the addresses reflected in the Debtor's Schedules of liabilities.

C. Cure Period. The failure by the Reorganized Debtor to timely perform any term, provision or covenant contained in this Plan shall not constitute an event of default, unless and until the Reorganized Debtor has been given thirty (30) days written notice of the alleged default and provided an opportunity to cure. Until the expiration of the thirty (30) day cure period, the Reorganized Debtor shall not be deemed to be in default, and any performance or actions taken during such thirty (30) day cure period shall be considered timely for all purposes. Such written notice pursuant to the Plan provisions and the passage of the thirty (30) day cure period shall constitute conditions precedent to bringing or filing any contested action by any person to enforce any right granted under this Plan.

## ARTICLE XI
## PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Except as specified in this Plan or as otherwise set forth in separate Motions before this Court, all contracts which exist between the Debtor and any individual or entity, whether such contract be in writing or oral, which have not heretofore been rejected or otherwise approved by Orders of the Court are hereby specifically rejected.

Further, and for the avoidance of doubt, to the extent not already rejected by separate Order, the Debtor expressly rejects the following leases and executory contracts:

1. Lease of Non-Residential Real Property with Datatek Properties, LLC for property located at 1735 Guess Rd., Durham, NC 27701. Such rejection shall be effective August 31, 2026.

2. Lease of Non-Residential Real Property with Benson Road Holdings, LLC, for property located at 3749 Benson Drive, Raleigh, NC 27609;

3. Debtor's Sublease with Copper Builders, LLC of the same property located at 3749 Benson Drive, Raleigh, NC 27609 (the "Sublease") to the extent the Sublease has not already been terminated.

4. Executory Contract with Carrot Fertility, Inc. for certain health benefits plan(s).

Notwithstanding the foregoing, this section is not intended to and does not reject any existing contracts between the Debtor and any third party for the provision of materials, goods, or services in accordance with ordinary course terms in effect between the parties as of the Effective Date, which contracts are expressly assumed, including without limitation the Debtor's any of the Debtor's ongoing contracts with its employees, patients, and/or service providers, with whom the Debtor is currently working.

The Debtor expressly assumes the following leases and executory contracts:

1. Lease of Non-Residential Real Property with Henry H. Sink, Jr., for property located at 1020 Washington St. Raleigh, NC 27605.

2. Lease of Non-Residential Real Property with Garner 70 East Business Park, LLC 143, for property located at US Highway 70 West Garner, NC 27529.

3. Lease of Non-Residential Real Property with Benson Road Holdings, LLC for property located at 3755 Benson Drive Raleigh, NC 27609.

4. Lease of Non-Residential Real Property with Lyckan, LLC for property located at 3708 Lyckan Pkwy, Suite 204, 205, 206 Durham, NC 27707.

5. Lease of Non-Residential Real Property with Jacques A. El-Chayeb for property located at 4701 Creedmoor Rd. Ste. 101 Raleigh, NC 27612.

## ARTICLE XII
## ACCEPTANCE OR REJECTION OF PLAN: EFFECT OF REJECTION BY AN IMPAIRED CLASS

A. Each Impaired Class Entitled to Vote Separately. Each Impaired Class of claims shall be entitled to have the holders of claims therein vote separately as a class to accept or reject the Plan.

B. Acceptance by a Class of Creditors. Consistent with § 1126(c) of the Bankruptcy Code, and except as provided in § 1126(e) of the Bankruptcy Code, a class of claims shall have accepted the Plan if the Plan is accepted by holders of at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the allowed claims of that class that have timely and properly voted to accept or reject the Plan.

C. Claimants Entitled to Vote. Holders of Impaired Claims shall be entitled to vote if:

(1) Such claim has been filed against the Debtor in a liquidated amount or has been listed on the Debtor's Schedules other than as contingent, unliquidated or disputed, and as to which no proof of claim has been filed. The claim shall be allowed solely for the purpose of voting on the Plan in the amount in which such claim has been filed or listed on the Debtor's Schedules;

(2) Such claim has been filed against the Debtor or listed on the Debtor's Schedules, and is the subject of an existing objection filed by the Debtor and is temporarily allowed for voting purposes by order of the Court in accordance with Bankruptcy Rule 3018; or

(3) Such claim has been filed in an undetermined amount, in which case the creditor shall not be entitled to vote unless the Debtor and the holder of the claim agree on an amount for

voting purposes or the Court enters an order setting the amount of the claim that the creditor may ballot.

Any entity holding two or more duplicate claims shall be entitled to vote only one claim.

D. Confirmation Hearing. The Court will set a hearing on the confirmation of the Plan to determine whether the Plan has been accepted by the requisite number of creditors and whether the other requirements for confirmation of the Plan have been satisfied.

E. Acceptances Necessary to Confirm the Plan. At the Confirmation Hearing, the Court shall determine, among other things, whether the Plan has been accepted by each Impaired Class. Under § 1126 of the Bankruptcy Code, an Impaired Class of Creditors is deemed to accept the Plan if at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the allowed claims of such Class vote to accept the Plan. Further, unless there is unanimous acceptance of the Plan by an Impaired Class, the Court must also determine that Class members will receive property with a value, as of the Effective Date of the Plan, that is not less than the amount that such Class member would receive or retain if the Debtor was liquidated as of the Effective Date of the Plan under Chapter 7 of the Bankruptcy Code.

F. Confirmation of Plan Without Necessary Acceptances. Section 1191(b) of the Bankruptcy Code provides that the Plan may be confirmed even if it is not accepted by all Impaired Classes. In order to be confirmed without the requisite number of acceptances of each Impaired Class, the Court must find that at least one Impaired Class has accepted the Plan without regard to the acceptances of insiders, and the Plan does not discriminate unfairly against, and is otherwise fair and equitable, to such Impaired Class. In the event that any Impaired Class votes against the Plan, the Debtor hereby requests and moves the Court under the provisions of this Plan outlined in Article XIII herein, for confirmation pursuant to the "cramdown" provisions of § 1191(b) of the Bankruptcy Code. In connection therewith, the Debtor shall be allowed to modify the proposed treatment of the allowed claims in any class that votes against the Plan consistent with § 1191(c).

## ARTICLE XIII
## "CRAMDOWN" FOR IMPAIRED CREDITORS NOT ACCEPTING THE PLAN

With respect to any Class of creditors Impaired but not accepting the Plan by the requisite majority in number or two-thirds in amount, the proponent of this Plan requests the Court to find that the Plan does not discriminate unfairly and is fair and equitable in respect to each Class of claims or interests that are Impaired under the Plan, and that the Court confirm the Plan without such acceptances by the said Impaired Classes. The Debtor will also request that the Court establish a value for any assets, the value of which is in dispute between the Debtor and any Secured Creditor, at a valuation hearing under Section 506 of the Bankruptcy Code, to be scheduled at the same time as the Confirmation Hearing.

## ARTICLE XIV
## EFFECT OF CONFIRMATION

A. Except as otherwise provided in the Plan, confirmation of the Plan vests all assets

and property of the estate in the Reorganized Debtor.

B. Injunction. From and after the Confirmation Date, except as otherwise provided in Sections 1141(d)(3), 1192, the Plan, or the Confirmation Order, all holders of "Claims" (including without limitation Secured Claims, General Unsecured Claims, all Priority Claims and any other claim, equity interest, or other debt or liability) against the Debtor and the Debtor-in-Possession are permanently restrained and enjoined (a) from commencing or continuing in any manner, any action or other proceeding of any kind with respect to any such Claim against the Debtor, (b) from enforcing, attaching, collecting, or recovering by any manner or means, any judgment, award, decree, or order against the Debtor, or the Debtor's assets, (c) from creating, perfecting, or enforcing any encumbrance of any kind against the Debtor or the Debtor's assets, (d) from asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due the Debtor, and (e) from performing any act, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan; provided, however, that each holder of a contested Claim may continue to prosecute its proof of Claim in accordance with the Plan and all holders of Claims shall be entitled to enforce their rights under the Plan. Notwithstanding the foregoing, except as otherwise expressly provided in the Plan, the Plan does not release or waive any claims the Debtor may have against any party in interest.

## ARTICLE XV
## DISCHARGE

A. Consensual Confirmation Under § 1191(a). If the Plan is confirmed consensually with the acceptance of all Impaired Classes, then upon entry of the Confirmation Order the Debtor will be discharged from any debt that arose before confirmation of the Plan pursuant to § 1141(d)(1)(A) of the Bankruptcy Code. Notwithstanding the foregoing, a discharge under § 1141(d) does not discharge the Debtor from any debt excepted from discharge under § 523 of the Bankruptcy Code.

B. Non-Consensual Confirmation Under § 1191(b). If the Plan is confirmed non-consensually without the acceptance of all Impaired Classes, confirmation of the Plan does not discharge any debt provided for in this Plan until the Court grants a discharge on completion of all payments due within five (5) years of the Effective Date, or as otherwise provided in § 1192 of the Bankruptcy Code. The Debtor will file a motion for entry of discharge. Said Motion will be noticed to all interested parties, and all parties shall have the right to file timely objections with the Court. A hearing will be held before the Court with regards to any such motion for entry of discharge order.

Upon granting of such a discharge, the Debtor will be discharged from any debt that arose before confirmation of this Plan, whether or not (i) a proof of claim based on such debt is filed or deemed file, (ii) such claim is allowed, or (iii) the holder of such claim has accepted the Plan. Except for the obligations imposed by the Plan, the distributions and rights that are provided in the Plan will be in complete satisfaction, discharge and release of all (i) claims, liabilities and obligations of the Debtor, (ii) liens on the Debtor's property, whether known or unknown, and (iii) causes of action, directly or derivatively through the Debtor, based on the same subject matter as any claim or liability.

## ARTICLE XVI
## APPLICATION OF PLAN PAYMENTS

A. All payments made by the Debtor shall be applied as indicated in the respective treatment for each creditor, or if no such application of payments is specified, then payments shall be applied to principal and interest on a monthly basis according to the amortization schedule proposed for each creditor. In the event that a creditor is entitled to costs and/or attorney's fees post-petition under § 506(b) of the Bankruptcy Code, such creditor must file an application in accordance with the Bankruptcy Code and/or Bankruptcy Rules pertaining to approval of costs and/or attorney fees prior to such costs and/or attorney's fees becoming part of the creditor's allowed claim. Confirmation of the Plan shall impose an affirmative duty and legal obligation on the holders and/or the servicers of any claims secured by liens, mortgages and/or deeds of trust to apply payments in the manner set forth in the Plan in accordance with § 524(i).

B. Confirmation of the plan shall impose a duty on the holders and/or servicers of claims secured by liens on real property to apply the payments received from the Debtor to the month in which they were made under the plan or directly by the Debtor, whether such payments are immediately applied to the loan or placed into some type of suspense account and to otherwise comply with 11 U.S.C. § 524(i).

## ARTICLE XVII
## RETENTION OF JURISDICTION

The Court shall retain jurisdiction of these proceedings pursuant to and for the purposes of §§ 105(a) and 1193 of the Bankruptcy Code and for, without limitation, the following purposes, inter alia:

1. To determine any and all objections to the allowance of Claims and/or interests;

2. To determine any and all applications for allowance of compensation for periods prior to or after the Confirmation Date;

3. To determine any and all applications pending on the Confirmation Date for the rejection and disaffirmance or assumption or assignment of executory contracts and the allowance of any Claim resulting therefrom;

4. To determine all controversies and disputes arising under or in connection with the Plan;

5. To determine all applications, adversary proceedings and litigated matters pending on the Confirmation Date or permitted to be filed or commenced pursuant to this Plan;

6. To hear and determine any and all claims or actions now pending or to be brought by the Debtor pursuant to the Debtor's enforcement and/or avoiding powers retained and authorized under this Plan;

7. To effectuate payments under, and performance of, the provisions of the Plan, including, but not limited to, future sales of personal and real property retained by the estate;

8. To determine such other matters and for such other purposes as may be provided for in the Confirmation Order;

9. To determine all disputes regarding property of the Debtor, the Reorganized Debtor, or the estate;

10. To establish and adjust procedures for the orderly administration of the estate;

11. To determine matters that are subject to proceedings duly removed to the Court;

12. To interpret and enforce the Plan and to determine compliance with the terms of the confirmed Plan;

13. To correct any defect or omission, or to reconcile any inconsistency in this Plan or the Confirmation Order as may be necessary to carry out the purposes and intent of this Plan; and

14. To modify this Plan after confirmation.

## ARTICLE XVIII
## GENERAL PROVISIONS

A. Severability. If any provision of this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

B. Survival of Terms. The covenants, representations and agreements made in this Plan shall survive the Confirmation Date and the transactions contemplated herein.

C. Binding Effect. The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of, the successors and/or assigns of such entity.

D. Captions. The headings and captions contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

E. Controlling Effect. Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code or the Bankruptcy Rules), the laws of the State of North Carolina govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as may otherwise be provided in this Plan.

F. Further Assurance. If at any time, the Debtor shall consider, or be advised, that any further releases, assurances or documents are reasonably necessary or desirable to carry out the

provisions hereof, and the transactions contemplated herein, the holders of claims and the holders of interest shall, upon reasonable request, execute and deliver any and all documents and assurances, and do all things necessary or appropriate to carry out fully the provisions hereof.

(*This space left intentionally blank.*)

Respectfully submitted, this the 12th day of August, 2026.

**HENDREN, REDWINE & MALONE, PLLC**

s/ *Lydia C. Carpenter*
Jason L. Hendren (NC State Bar No. 26869)
Rebecca Redwine Grow (NC State Bar No. 37012)
Benjamin E.F.B. Waller (NC State Bar No. 27680)
Lydia C. Carpenter (NC State Bar No. 56697)
4600 Marriott Drive, Suite 150
Raleigh, NC 27612
Telephone: (919) 573-1422
Facsimile: (919) 420-0475
Email: jhendren@hendrenmalone.com
rredwine@hendrenmalone.com
bwaller@hendrenmalone.com
lcarpenter@hendrenmalone.com
*Counsel for the Debtor*

**EXHIBIT "A"**
**LIQUIDATION ANALYSIS**

| ASSETS | LIENHOLDER / AMOUNT OF LIEN | LIQUIDATION VALUE | EQUITY |
|---|---|---|---|
| Bank Accounts | Truist Bank<br>$ 500,064.90 | $ - | $ - |
| Security Deposits | Landlords<br>$ 31,704.00 | $ 31,704.00 | $ - |
| AR | Truist Bank | $ 303,259.82 | $ - |
| Office Furniture | Kapitus Servicing, LLC<br>$ 6,000.00 | $ 6,000.00 | |
| Email listserv | | $ - | |
| | **TOTALS** | Gross Equity before Ch 7 Expense | **$ -** |

**LESS:**

**ALL ASSETS**

**Real Property Marketing Expense**

| | |
|---|---|
| Commission 6% | $ - |
| Closing Costs and Upkeep 1% | $ - |
| | **$ -** |

**Auctioneer Fees Personal Property**

| | |
|---|---|
| 20% of first $20,000 | |
| 10% of next $20,000.00 to $50,000.00 | $ - |
| 8% of balance over $50,000.00 | $ - |
| | **$ -** |

**Trustee's Commission/Expense**

| | |
|---|---|
| 25% of first $5000 | |
| 10% of next $5000-$50,000 | |
| 5% of next $50,000-$1,000,000 | |
| 3% of the balance | $ - |
| Trustee's Attorney Fees (estimated) | $ 20,000.00 |
| | **$ 20,000.00** |

| | |
|---|---|
| Administrative Claims/Court Appointed Professionals | $ 50,000.00 |
| Priority Claims | $ 2,146.43 |
| | **$ 52,146.43** |
| **Total Net Equity Available to Unsecured Creditors in Chapter 7:** | **$ (72,146.43)** |

**EXHIBIT B**

| | | Year 1 | | Year 2 | | Year 3 |
|---|---|---|---|---|---|---|
| **Income** | $ | 8,086,720.00 | $ | 8,329,321.60 | $ | 8,662,494.46 |
| **TOTAL INCOME** | **$** | **8,086,720.00** | **$** | **8,329,321.60** | **$** | **8,662,494.46** |
| | | | | | | |
| **Expenses** | | | | | | |
| Payroll & Payroll Taxes | $ | 6,270,176.08 | $ | 6,458,281.36 | $ | 6,716,612.62 |
| Rent | $ | 342,000.00 | $ | 352,260.00 | $ | 366,350.40 |
| Utilities | $ | 24,000.00 | $ | 24,720.00 | $ | 25,708.80 |
| Health Insurance Benefits | $ | 465,430.00 | $ | 488,701.50 | $ | 508,249.56 |
| Other Benefits | $ | 88,800.00 | $ | 91,464.00 | $ | 95,122.56 |
| Softwafe Subscriptions | $ | 96,000.00 | $ | 98,880.00 | $ | 102,835.20 |
| Office Supplies / Repairs and maintnenace | $ | 24,000.00 | $ | 24,720.00 | $ | 25,708.80 |
| Marketing/Advertising | $ | 108,000.00 | $ | 100,000.00 | $ | 104,000.00 |
| Business Insurance/Malpractice | $ | 63,600.00 | $ | 65,508.00 | $ | 68,128.32 |
| Triumph Credentialing | $ | 48,000.00 | $ | 49,440.00 | $ | 51,417.60 |
| HR Fractional | $ | 24,000.00 | $ | 24,720.00 | $ | 25,708.80 |
| Independent Contractors | $ | 42,000.00 | $ | 43,260.00 | $ | 44,990.40 |
| Patient Reimbursements | $ | 6,000.00 | $ | 6,180.00 | $ | 6,427.20 |
| 401K Contributions (Withheld Wages) | $ | 252,000.00 | $ | 259,560.00 | $ | 269,942.40 |
| Thomas Judy Tucker monthly accounting | $ | 54,000.00 | $ | 55,620.00 | $ | 57,844.80 |
| 401K Audit | $ | 14,000.00 | $ | 14,420.00 | $ | 14,996.80 |
| Tax Reserve | $ | 4,000.00 | $ | 4,500.00 | $ | 6,500.00 |
| | | | | | | |
| **TOTAL EXPENSES** | **$** | **7,926,006.08** | **$** | **8,162,234.86** | **$** | **8,490,544.26** |
| | | | | | | |
| **Administrative Claims** | | | | | | |
| Rent Admins | $ | 10,269.19 | | | | |
| Vault Cure | $ | 5,709.25 | | | | |
| **TOTAL ADMINISTRATIVE CLAIMS** | **$** | **15,978.44** | | | | |
| | | | | | | |
| **Bankruptcy Admins** | | | | | | |
| HRM | $ | 30,000.00 | | | | |
| SubV Trustee | | | | | | |
| Accountant (tax prep) | $ | 6,000.00 | $ | 6,000.00 | $ | 6,000.00 |
| **TOTAL BANKRUPTCY ADMINS** | **$** | **36,000.00** | $ | 6,000.00 | $ | 6,000.00 |
| | | | | | | |
| **Secured Claims** | | | | | | |
| Truist | $ | 100,592.40 | $ | 100,592.40 | $ | 100,592.40 |
| **TOTAL SECURED PAYMENTS** | **$** | **100,592.40** | **$** | **100,592.40** | **$** | **100,592.40** |
| | | | | | | |
| **Priority Claims** | | | | | | |
| IRS | $ | - | $ | - | $ | - |
| NCDOR | $ | 150.53 | | | | |
| Other States DOR | $ | 754.20 | $ | 754.20 | $ | 754.20 |
| Wake County Revenue | $ | - | $ | - | $ | - |
| Chatham County Revenue | $ | - | $ | - | $ | - |
| Orange County Revenue | $ | - | $ | - | $ | - |
| Druham County Revenue | $ | - | $ | - | $ | - |
| **TOTAL PRIORITY PAYMENTS** | **$** | **904.73** | **$** | **754.20** | **$** | **754.20** |
| | | | | | | |
| **UNSECURED CLAIMS** | **$** | **2,000.00** | **$** | **50,000.00** | **$** | **50,000.00** |
| | | | | | | |
| **TOTAL EXPENSES AND PLAN PAYMENTS** | **$** | **8,081,481.65** | **$** | **8,319,581.46** | **$** | **8,647,890.86** |
| | | | | | | |
| **NET PROFIT/LOSS WITH PLAN PAYMENTS** | **$** | **5,238.35** | **$** | **9,740.14** | **$** | **14,603.61** |