**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**RALEIGH DIVISION**

| | |
|---|---|
| **IN RE:**<br><br>**THREE OAKS BEHAVIORAL HEALTH & WELLNESS, PLLC,**<br><br>**DEBTOR** | **CASE NO. 26-01207-5-JNC**<br><br>**CHAPTER 11** |

**OBJECTION TO CONFIRMATION OF DEBTOR'S PLAN OF REORGANIZATION FOR SMALL BUSINESS UNDER CHAPTER 11**

COMES NOW Kapitus Servicing, Inc. as authorized sub-servicing agent of Kapitus, LLC ("Kapitus"), creditor in interest in the above proceeding, by and through counsel, pursuant to 11 U.S.C. §§ 1112, 1129 and 1181-1195 of the Federal Rules of Bankruptcy Procedure and in accordance with the *Order Fixing Last Day to File Acceptances/Rejections of the Plan, Setting Hearing on Confirmation of the Plan, Directing that Ballots be Filed and Directing the Plan Proponent to File Report on Ballots*, and files this objection to confirmation of the *Plan of Reorganization for Small Business Under Chapter 11* (the "Plan") filed by Three Oaks Behavioral Health & Wellness, PLLC ("Debtor").[1] Kapitus objects to confirmation of the Plan on the grounds that the Plan is not feasible; is not in the best interest of creditors; unfairly discriminates against and is not fair and equitable to Kapitus under 11 U.S.C. § 1129(b)(1) or § 1191(c); and is proposed in bad faith. In support of its objection, Kapitus would show the Court as follows:

[1] Doc. 153; Doc. 151.

## BACKGROUND FACTS

### I. Transaction Documents

1. Kapitus is a creditor of the Debtor by virtue of that certain *Loan Agreement* dated March 27, 2025, and the related *Security Agreement* and *Guaranty* agreements (collectively, the "Agreement").[2]

2. Pursuant to the Agreement, Kapitus made a loan to the Debtor in the original principal amount of $300,000.[3]

3. To secure the payment and performance of all of the Debtor's obligations under the Agreement, the Debtor granted Kapitus a continuing security interest in and lien upon all or substantially all of the Debtor's personal property, including, without limitation, all accounts, accounts receivable, all cash on hand and on deposit in banks, equipment, inventory, goods, chattel paper, instruments, documents and general intangibles, and all products and proceeds of any of the foregoing (collectively, and as more particularly defined in the Agreement, the "Collateral").[4]

4. Kapitus perfected its security interests in and liens upon the Collateral by filing a UCC-1 Financing Statement on March 27, 2025, with the North Carolina Secretary of State at File Number 20250036886A.[5]

---

[2] Claim 3 (the "Claim") at Exhibit 1 (Loan Agreement), Exhibit 2 (Security Agreement and Guaranty).

[3] Claim 3 at Exhibit 1 (Loan Agreement).

[4] Claim 3 at Exhibit 1 (Loan Agreement), Exhibit 2 (Security Agreement).

[5] Claim 3 at Exhibit 3 (UCC Financing Statement).

## II. The Bankruptcy

5. On or about March 16, 2026 (the "Petition Date"), the Debtor filed a petition under Chapter 11, Subchapter V of the United States Bankruptcy Code (the "Code") in the United States Bankruptcy Court for the Eastern District of North Carolina, Raleigh Division.[6]

6. The Debtor recognized Kapitus as a disputed, unsecured creditor in the amount of $175,000 in its initial Petition.[7]

7. However, the Debtor recognized "CT Corporation System" as a secured creditor of the Debtor pursuant to the Financing Statement filed by CT Corporation System as a representative of Kapitus.[8] Accordingly, Kapitus is the proper secured party.[9]

8. As of the Petition Date, Kapitus is a secured creditor in this bankruptcy case in the total amount of $282,040.09, as evidenced by its proof of claim.[10]

9. Under the Plan, the Debtor proposes that Kapitus' claim fall into Class 3 and be "treated as a general unsecured claim in Class 7" whereby Kapitus would receive, assuming the Debtor intended to designate Kapitus' treatment under "Class 8 – General Unsecured Claims," a

---

[6] Doc. 1.

[7] Doc. 1 at 3.12.

[8] Doc. 1 at 2.2.

[9] The Agreement is governed by Virginia law. Claim 3 at Exhibit 1 (Loan Agreement) at ¶ 1.18. Under the laws of both Virginia and North Carolina, a financing statement is sufficient if it provides the name of the secured party or a representative of the secured party. Va. Code. Ann. § 8.9A-502(2) ("the name of the secured party or a representative of the secured party); N.C. Gen. Stat. Ann. § 25-9-502 ("the name of the secured party or a representative of the secured party"). Indeed, even the "[f]ailure to indicate the representative capacity of a secured party or representative of a secured party does not affect the sufficiency of the financing statement." Va. Code. Ann. § 8.9A-503(d); N.C. Gen. Stat. Ann. § 25-9-503(d). Debtor likewise acknowledged and agreed in the Agreements that Kapitus "may file UCC-1 financing statements and other notices or filings using [affiliates, representatives, agents, 'doing business as' or 'd/b/a' and/or fictious names] on its own behalf or through [its] agent." *See* Claim 3 at Exhibit 1 (Loan Agreement) at ¶ 1.12.

[10] *See* Claim 3.

*pro rata* distribution from $102,000 over the period of three years.[11] The Plan further demands that "Kapitus shall terminate the Kapitus Financing Statement."[12]

10. The Debtor proposes to make payments under the Plan from "cash on hand and continued operations of the business."[13] In support, the Debtor appended its projected financial information as Exhibit B to the Plan (the "Financial Projections").[14]

**ARGUMENT**

11. The Small Business Reorganization Act "created Subchapter V under Chapter 11 of the Bankruptcy Code to permit eligible small business debtors 'to file bankruptcy in a timely, cost-effective manner.'"[15] Because Subchapter V is intended to provide an expedited process, some of the requirements that can add layers of expense and complexity involved in a typical Chapter 11 case have been eliminated.[16] Examples of the streamlined and cost-reducing reorganizational features in Subchapter V include the appointment of a Subchapter V Trustee, the ability to pay administrative expenses over time, and the elimination of the absolute priority rule.[17]

12. Confirmation of a Subchapter V plan is governed by Section 1191 of the Bankruptcy Code. Where, as here, a debtor cannot obtain full consent for the plan (*i.e.,* one or more impaired classes of claims or interests rejects the plan), Section 1191(b) prescribes the rules

---

[11] Doc. 151 at 15, 17 of 31.

[12] Doc. 151 at 15 of 31.

[13] Doc. 151 at 9, 14 of 31.

[14] Doc. 151 at 9, 31 of 31.

[15] *In re Parking Management, Inc.*, 620 B.R. 544, 549 (Bankr. D. Md. 2020) (citation omitted).

[16] *In re Wildwood Villages, LLC*, 2021 WL 1784408 at * 3 (Bankr. M.D. Fla. May 4, 2021).

[17] *Id.*

for cramdown.[18] Under Section 1191(b), the Court shall confirm a plan that satisfies the requirements for confirmation under Section 1129(a), other than paragraphs (8), (10), and (15) of that section, provided that (i) the Plan does not discriminate unfairly against any impaired, non-consenting class and (ii) is "fair and equitable" regarding each class of impaired claims that has rejected the Plan.[19] In order for a plan to be "fair and equitable," 11 U.S.C. § 1191(c) specifies that a debtor must, (i) apply all projected disposable income to plan payments or the value of property distributed under the plan meets or exceeds the debtor's projected disposable income; (ii) make all plan payments; or (iii) be reasonably likely to make all plan payments and include "appropriate remedies . . . to protect the holders of claims or interests" in the plan[20]

**I. The Plan is Not Feasible.**

13. A plan proponent bears the burden of proving that its plan is feasible by a preponderance of the evidence.[21] Under Section 1129(a)(11), a plan is feasible if confirmation of the plan "is not likely to be followed by the liquidation, or the need for further financial reorganization."[22] Such feasibility requirement "mandates that the proponent of a Chapter 11 plan offer concrete evidence of sufficient cash flow to fund and maintain both its operations and its obligations."[23] However, the standard for feasibility in a Subchapter V is different than that in a

[18] *See* 11 U.S.C. § 1191(b). "Cramdown" is a bankruptcy term of art that refers to the modification of a rights over its objection. *In re Yett*, 306 B.R. 287, (B.A.P. 9th Cir. 2004). Although, the term "cramdown" does not appear in the Bankruptcy Code; it is found in the legislative history. See H.R.Rep. No. 95-595, at 413 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6369; 124 Cong. Rec. 32,407 (1978).

[19] *Id.*

[20] *See* 11 U.S.C. § 1191(c).

[21] 11 U.S.C. § 1129(a)(l1); *see also In re Mohajer 12 Corp.,* No. 18-2674-JCO, 2021 WL 287805 (Bankr. S.D. Ala. Jan. 22, 2021).

[22] *In re Mohajer 12 Corp.,* No. 18-2674-JCO, 2021 WL 287805 at *4.

[23] *Id.* (emphasis in original) (internal citations omitted).

standard Chapter 11 as a debtor must show that they "will be able to make all payments under the plan . . . or . . . there is a reasonable likelihood that the debtor will be able to make all payments under the plan."[24] In essence, Section 1191 "fortifies the more relaxed feasibility test that § 1129(a)(11) contains" and "requires a harder look at feasibility than otherwise conducted under § 1129(a)(11) alone."[25] The Plan does not satisfy the feasibility requirements of Section 1129 or the more stringent requirements set forth in Section 1191.

14. Though the Plan provides that payments will be satisfied by the future income of the Debtor's business, the Debtor has not provided objective facts or analysis sufficient to support its contention that business revenue could support the obligations contemplated under the Plan (even without contemplating ***any*** payments on Kapitus' secured Claim).[26] On the contrary, the record before this Court demonstrates that the Debtor has continued to operate its business at an inconsistent and unpredictable margin that cannot assure creditors that the additional obligations under the Plan would be met.[27]

15. The Debtor's own monthly operating reports evidence net cash flow ranging from a positive $187,501.54 to a negative $263,173.60 over the course of six months.[28] Such figures fluctuate in a way that fails to evidence any conceivable trend of growing revenue or stability with the Debtor having a positive net cash flow of $187,501.54 one month and a negative net cash flow

---

[24] *In re Nelkin & Nelkin P.C.*, 662 B.R. 550, 562 (Bankr. S.D. Tex. 2024).

[25] *Id.*

[26] Doc. 151 at 15, 17 of 31.

[27] *See* Docs. 62, 90, 133, 146, 161, 168.

[28] *Id.*

of $263,173.60 the very next month.[29] The Debtor's monthly operating reports also indicate that the Debtor has cumulatively lost $83,378.42 over the past six months.[30] The Debtor cannot show that they will be in a position to satisfy the additional obligations contemplated under the Plan when the Debtor has been operating at a loss.[31] Ultimately, the Debtor has failed to provide concrete evidence to support maintaining its operations and obligations under the Plan, including the ability to make all Plan payments proposed as a matter of fact.

**II. The Plan is Not in the Best Interest of Creditors.**

16. The "best interests" test of Section 1129(a)(7) requires that all impaired creditors and interest holders fare at least as well under a proposed plan as they would in a Chapter 7 liquidation.[32] Section 1129(a)(7) requires that each member of an impaired class receive or retain under a proposed plan property of a value, as of the effective date of the plan, at least equal to that which the member would receive or retain in a Chapter 7 liquidation, unless the class unanimously accepts the plan.[33] This provision is a cornerstone of Chapter 11 and assures creditors that they will receive at least as much value in the reorganization process as they would if the debtor were liquidated.[34]

17. The Debtor has not demonstrated that the Plan would provide creditors value at least equal to what they would receive in a chapter 7 liquidation. In the Petition, the Debtor, under

---

[29] *Id.*

[30] *Id.*

[31] *See id; see also* Doc. 151.

[32] 11 U.S.C. § 1129(a)(7)(A).

[33] *Id.*

[34] *See* 7 Collier on Bankruptcy ¶ 1129.02[7]; *see also* 6 Norton Bankr. L. & Prac. 3d § 112:7.

penalty of perjury, disclosed assets totaling $424,587.64.[35] However, the Debtor's amended schedules, filed less than two months later, evidence assets totaling only $301,093.86.[36] In addition to the Debtor's loss of assets, as set forth above, the Debtor has operated its business at a loss throughout the pendency of this proceeding, cumulatively losing $83,378.42 over the past six months.[37]

18. The Debtor cannot reassure its creditors or this Court that the Plan is in the best interest of creditors. The record before the Court evidences that the assets available to creditors have dwindled throughout the duration of this bankruptcy proceeding, and the Debtor has not proffered evidence that could indicate an upturn in the Debtor's business necessary to support the Plan. Accordingly, the Debtor has not assured its creditors or this Court that the Plan will not merely delay and further impair creditor recovery as the Debtor's assets are further diminished.

**III. The Plan Unfairly Discriminates Against Kapitus.**

19. The Debtor bears the burden of proving that the Plan "does not discriminate unfairly . . . with respect to each class of claims or interests that is impaired under, and has not accepted, the plan."[38]

20. The Plan unfairly discriminates against Kapitus as a result of the Debtor's refusal to provide adequate treatment for Kapitus' secured Claim in the Plan. In fact, the Debtor proposes to pay its other secured creditor (Truist Bank) in full while allowing such creditor to retain their lien while Kapitus, who is also a secured creditor of the debtor, is treated as fully unsecured under

---

[35] Doc. 1 at 10 of 45.

[36] Doc. 73 at 2 of 10.

[37] *Id.*

[38] 11 U.S.C. § 1129(b)(1).

the Plan with instruction to "terminate the Kapitus Financing Statement."[39] The Debtor has provided no cause or justification for their treatment of Kapitus' claim as unsecured or demand that Kapitus terminate the Financing Statement.[40]

21. The Debtor's misclassification of Kapitus' Claim and refusal to treat Kapitus as a secured creditor, in the same manner as other similarly situated secured creditors under the Plan constitutes unfair discrimination against Kapitus.

## IV. The Plan is Not Fair & Equitable.

22. The Debtor likewise has the burden of proving that the Plan "is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan."[41] With respect to secured claims, the condition that a plan be fair and equitable includes retention of the liens on the property secured by the claim and deferred cash payments totaling at least the allowed amount of the claim.[42] Thus, the Plan must pay the "present value" of the secured claim.[43] The valuation used for determining the value of a creditor's secured claim is to be determined "in light of the purpose of the valuation and of the proposed disposition or use of such property."[44] Where, as here, a debtor proposes to retain a secured creditor's collateral, the appropriate valuation method under § 506(a) is one which reflects the true value of the collateral in the hands of the Debtor.[45] The Plan is not fair and equitable with respect to Kapitus because it

---

[39] Doc. 151 at 15 of 31.

[40] *See* Doc. 151.

[41] 11 U.S.C. § 1129(b)(1).

[42] *See* 11 U.S.C. § 1129(b)(2).

[43] *In re Grandfather Mountain Ltd. P'ship,* 207 B.R. 475, 487 (Bankr. M.D.N.C. 1996).

[44] 11 U.S.C. § 506(a).

[45] *In re Deep River Warehouse, Inc.*, No. 04-52749, 2005 WL 1287987, 2005 Bankr. LEXIS 1090, at *23 (Bankr. M.D.N.C. Mar. 14, 2005) ("Because the Debtor's proposed Chapter 11 plan of reorganization proposes to retain the

fails to provide Kapitus with the retention of its liens on the Collateral or the present value of the Claim.

23. The record before the Court is devoid of any support for the Debtor's purported valuation of its assets. Under the Plan, the Debtor intends to use its assets, including the Collateral, in the operation of its business as a going concern such that the value of the Debtor's assets should be based upon the going concern value rather than their liquidation cost.[46] The Debtor's asset inventory included in the Liquidation Analysis attached as Exhibit A to the Plan contemplates generalized asset categories that are assigned a single, lump sum "Liquidation Value" without further detail or explanation.[47] The Debtor has provided no support for the dollar amounts assigned.[48] The Debtor has not and cannot meet its burden to show the Plan is fair and equitable to Kapitus where the Debtor relies on unsubstantiated, liquidation asset valuations, and, as a result, has failed to adequately show the Plan provides Kapitus with the present value of its Claim over the life of the Plan.

## V. The Plan Was Not Filed in Good Faith.

24. The Fourth Circuit has recognized that a court must find that a "plan was proposed in good faith" under § 1129(a)(3) prior to confirmation.[49] In doing so, the Fourth Circuit explained that while "good faith" has not been "defined by statute nor our prior case law" in this context,

---

Property as a going concern, the proper standard of valuation in this matter is a value that reflects the fair market value of the Property marketed as a going concern.").

[46] *See In re Deep River Warehouse, Inc.*, No. 04-52749, 2005 WL 1287987 at 2005 ("Because the Debtor's proposed Chapter 11 plan of reorganization proposes to retain the Property as a going concern, the proper standard of valuation in this matter is a value that reflects the fair market value of the Property marketed as a going concern.").

[47] Doc. 151 at 30 of 31.

[48] *See id.*

[49] *In re Kaiser Gypsum Co., Inc.,* 135 F.4th 185, 193-194 (4th Cir. 2025).

"compliance with the objectives of the [Bankruptcy] Code . . . provides strong evidence of" good faith.[50] Specifically, the two primary purposes of Chapter 11 are "preserving going concerns and maximizing property available to satisfy creditors."[51] Here, as described in detail above, the Debtor's Plan fails both of these objectives.

WHEREFORE, based upon the foregoing, Kapitus objects to confirmation of the Plan proposed by Debtor, and prays for an Order denying confirmation of the Plan until such Plan is amended to address the shortcomings set forth above.

This, the 7th day of October, 2026.

BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC

By: /s/ Jill C. Walters
Jill C. Walters
NC State Bar No. 37121
2235 Gateway Access Point
Suite 220
Raleigh, North Carolina 27607
Telephone: 984.844.7919
Email: jwalters@bakerdonelson.com

*Counsel for Kapitus Servicing, Inc. as authorized sub-servicing agent of Kapitus, LLC*

[50] *Id.*

[51] *Id.* (internal citations and quotations omitted).

CERTIFICATE OF SERVICE

I, the undersigned, of Baker, Donelson, Bearman, Caldwell & Berkowitz, PC certifies:

That I am, and at all times hereinafter mentioned was, more than eighteen (18) years of age;

That on this day, the foregoing Objection to Confirmation of Debtor's Plan of Reorganization for Small Business Under Chapter 11 was served via postage paid, regular first class mail and by electronic means through the court's CM/ECF service as follows:

Three Oaks Behavioral Health & Wellness, PLLC
1011 Dresser Court
Raleigh, NC 27609

Lydia C. Carpenter ***(Via CM/ECF)***
Jason L. Hendren
Rebecca Redwine Grow
Benjamin E.F.B. Waller
*Attorney for Debtor*

George M. Oliver ***(Via CM/ECF)***
Chapter 11 Trustee

Brian C. Behr, Esq. ***(Via CM/ECF)***
U.S. Bankruptcy Administrator – EDNC

All other parties of interest served via electronic means through the court's CM/ECF service.

This, the 7th day of October, 2026.

BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC

By: /s/ Jill C. Walters
Jill C. Walters
NC State Bar No. 37121
2235 Gateway Access Point
Suite 220
Raleigh, North Carolina 27607
Telephone: 984.844.7919
Email: jwalters@bakerdonelson.com

*Counsel for Kapitus Servicing, Inc. as authorized sub-servicing agent of Kapitus, LLC*